# Gregory Columb v. Marjorie Columb

[633 A.2d 689]

No. 91-520

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 17, 1993

Motion for Reargument Denied October 22, 1993

*Philip H. White* of *Wilson & White, P.C.*, Montpelier, for Plaintiff-Appellant.

*Barney L. Brannen* of *Plante, Hanley & Gerety, P.C.*, White River Junction, for Defendant-Appellee.

**Dooley, J.** Plaintiff Gregory Columb seeks to modify the 1988 decree divorcing him from defendant Marjorie Columb so that he may obtain custody of their daughter Merideth. The trial court determined that the facts of this case do not meet the jurisdictional requirements of the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, and, therefore, Vermont courts lack subject matter jurisdiction. We reverse this jurisdictional determination and remand for further proceedings.

The parties separated in 1984, and the child went to live with her mother in New Hampshire. The father continued to reside in Vermont and filed for divorce in 1987. The divorce judgment issued in 1988 and gave the mother physical custody of the child with limited visitation rights to the father. The mother began living with Robert Langlois and has since married him. Prior to July 1991, they resided in New Hampshire, Nova Scotia and various locations in Maine.

The events giving rise to this appeal began when the mother moved to New Hampshire in July 1991, while the child was visiting the father. According to the mother's affidavit, the move was temporary and she and Mr. Langlois intended to return to Maine after the tourist season to begin new jobs. In fact, they moved to Utah in the fall of 1991 and have remained there since.

During the 1991 summer visit to Vermont, the child reported physical abuse by Mr. Langlois. After a clinical evaluation of the

child, the father refused to return her to the mother and, on August 14, 1991, moved to modify the 1988 decree to transfer custody to him. In response to the mother's motion to dismiss, the family court ruled that it lacked subject matter jurisdiction under Vermont's version of the Uniform Child Custody Jurisdiction Act (UCCJA), 15 V.S.A. §§ 1031–1051. Specifically, the court ruled that Maine was the child's home state, that it would not be in the child's best interest to litigate custody in Vermont, and that Vermont was an inconvenient forum.

The father moved to reconsider, alleging that the court had been misled into determining that Maine was the mother's and the child's home state when, in fact, the mother and Mr. Langlois were fighting extradition to Maine to respond to felony charges. The motion was denied because the father's counsel failed to appear at the hearing. The issues were, however, aired in response to a new motion, which was heard during a remand from this Court. By that time, this Court had decided *Shute v. Shute*, 158 Vt. 242, 247, 607 A.2d 890, 893 (1992), in which we held that, when there is a conflict, the PKPA preempts the UCCJA and determines which state has jurisdiction over child custody disputes. Based on the PKPA, the family court concluded that Vermont did not have jurisdiction to modify the custody order and denied the motion.

The father makes three arguments on appeal: (1) we should limit or overrule *Shute* so that its holding does not apply in this case; (2) the mother waived any objection to jurisdiction over custody of the child by appearing in the divorce action; and (3) Vermont has jurisdiction to determine custody of the child because the child had no home state when the motions to modify custody were filed. We begin with an analysis of *Shute*.

*Shute* involved a noncustodial parent's attempt to enforce visitation rights contained in a Vermont divorce decree. At the time the underlying divorce action was filed, the custodial parent and the child had resided in Connecticut for over six months. The custodial parent did not contest the jurisdiction of the Vermont court to adjudicate the divorce and the custody issue. When enforcement issues arose, however, the custodial parent began a proceeding in Connecticut to cut off visitation rights and asserted that the Vermont court did not have jurisdiction with respect to a child whose home state was Connecti-

cut. The trial court dismissed the Vermont proceeding in favor of the one pending in Connecticut. *Id.* at 243–44, 607 A.2d at 891–92.

Although the parties litigated *Shute* under the UCCJA, which has been adopted in both Vermont and Connecticut, this Court concluded that the PKPA controlled. That statute was enacted by Congress to establish "national standards for determining subject matter jurisdiction over custody matters."*Id.* at 245, 607 A.2d at 893. We found that "the language of the PKPA indicates that Congress intended to preempt the field of custody jurisdiction" and that intent was achieved through the Supremacy Clause. *Id.* at 246, 607 A.2d at 893.

The preemption issue was important in *Shute* because the PKPA and the UCCJA, although similar in purpose and approach, differ on the consideration to be given to the home state of the child. The "home state" is defined as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months." 15 V.S.A. § 1031(5); see also 28 U.S.C. § 1738A(b)(4) (essentially identical definition). In both statutes, periods of temporary absence are counted as part of the six-month period.

The UCCJA grants jurisdiction to adjudicate custody to the child's home state at the time of the commencement of the proceeding, or, in certain circumstances, to the state that was the home state within six months before the proceedings commenced, 15 V.S.A. § 1032(a)(1), but it also grants jurisdiction to a state that is not the home state when there are certain contacts and "it is in the best interest of the child." 15 V.S.A. § 1032(a)(2). The PKPA, on the other hand, gives primacy to the home state or the recent home state[1] and does not authorize

---

[1] Both the PKPA and the UCCJA extend home state jurisdiction to a state which was the home state of the child within six months before the commencement of the proceeding if "the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state." 15 V.S.A. § 1032(a)(1)(B); see 28 U.S.C. § 1738A(c)(2)(A)(ii) (substantially identical requirement). Because six months residence is necessary for the child to acquire a home state, this extension is necessary to ensure that

alternative "best interest" jurisdiction unless there is no home state. See 28 U.S.C. § 1738A(c)(2)(B)(i) (court may look to other tests to assert jurisdiction; "best interests" standard only applies if "it appears that no other state would have jurisdiction" as home state).

In *Shute*, the home state of the child was Connecticut even at the time the original divorce action was filed as both mother and child had been residents of Connecticut for nine months before the divorce action was filed in Vermont. 158 Vt. at 247, 607 A.2d at 894. Thus, we held that Connecticut had jurisdiction under the PKPA, and it was improper for Vermont to assert jurisdiction. *Id.* at 248, 607 A.2d at 894.

The facts of this case are in many respects similar to those in *Shute*. As in *Shute*, when the underlying custody order was issued, another state, in this case New Hampshire, was the home state of the child. As in *Shute*, this state has never become the home state of the child although the noncustodial parent resides in Vermont and the child has been here for visits. Unlike *Shute*, however, in this case, there is no proceeding pending in the home state of the child if, indeed, the child now has a home state.

The father argues that the PKPA does not apply in this circumstance and, therefore, does not preempt the UCCJA because the PKPA deals only with situations when one state must give full faith and credit to the custody decision of another state and when a custody decision of one state is to be modified in another state. Thus, in the father's view, the initial jurisdiction question, before any interstate conflict arises, is determined solely by the UCCJA and can be based on "best interest" jurisdiction. *Shute* can be distinguished, the father argues, because in that case separate proceedings existed in Connecticut creating the interstate conflict.

The father acknowledges that his argument would result in a custody order that is not entitled to full faith and credit in other states because the order would not meet PKPA requirements. He argues that we should ignore this deficiency because other

_____

a child does not inappropriately lose a home state. In the remainder of the opinion, we have considered the extension to be part of home-state jurisdiction and not mentioned it separately.

states are free to recognize our order even if they are not required to do so.

We agree that in the narrow sense urged by the father the PKPA does not preempt the jurisdictional authority granted in the UCCJA. See *E.E.B. v. D.A.*, 446 A.2d 871, 879 (N.J. 1982) (PKPA does not "significantly disrupt" jurisdictional provisions of UCCJA), *cert. denied*, 459 U.S. 1210 (1983); Coombs, *Interstate Child Custody: Jurisdiction, Recognition, and Enforcement*, 66 Minn. L. Rev. 711, 822–34 (1982) (preemption exists only to the extent compliance with both is impossible).[2] As the father argues, the PKPA governs the enforceability of one state's custody order in another state and the other state's power to modify that order; it does not purport to control the jurisdiction to issue an initial order. See *Thompson v. Thompson*, 484 U.S. 174, 181 (1988) (purpose of PKPA is "to provide for nationwide enforcement of custody orders made in accordance with the terms of the UCCJA"); Foster, *Child Custody Jurisdiction: UCCJA and PKPA*, 27 N.Y.L. Sch. L. Rev. 297, 307 (1981). Thus, there is no conflict between the UCCJA, which controls initial jurisdiction, and the PKPA, which does not.

The father's argument, however, ignores the coercive effect of the PKPA on the jurisdictional choices available to us. In practice,

> [i]t seems obvious . . . that all states will wish their decrees to have the protection of the rather strict enforcement requirements of the PKPA. It follows that they will be guided by the conditions which that Act imposes for enforcement where those conditions differ from the UCCJA. But in order to be enforceable under the PKPA, a state's decree must also be based upon jurisdiction under its own law, which means, now that the UCCJA is in force in all states, under the UCCJA. Thus for all practical purposes initial

---

[2] We agree with Professor Foster's statement that "[i]t may be somewhat of an overstatement to assert that the PKPA *preempts* the UCCJA, or it may be hypertechnical to say that it does *not* preempt." Foster, *Child Custody Jurisdiction: UCCJA and PKPA*, 27 N.Y.L. Sch. L. Rev. 297, 335 (1981). We did not intend a broader concept of preemption in *Shute*: "[T]he PKPA preempts the Vermont statutes *that conflict with the PKPA.*" 158 Vt. at 247, 607 A.2d at 893.

jurisdiction in custody cases must comply with both the PKPA and the UCCJA.

1 H. Clark, The Law of Domestic Relations § 13.5, at 804–05 (2d ed. 1987) (footnotes omitted); see also Foster, *supra*, at 331 (noting that PKPA "coerces conformity with its standards"). The theoretical possibility that a home state would recognize a Vermont custody order issued without the full faith and credit protection of the PKPA is overwhelmed by the reality that courts have too often failed to respect other states' custody decrees even when issued in conformity with the UCCJA and PKPA. See generally Charlow, *Jurisdictional Gerrymandering and the Parental Kidnapping Protection Act*, 25 Fam. L.Q. 299, 311–13 (1991) (despite passage of PKPA, "conflicting custody orders in different state courts continue to be commonplace"). Further, a home state custody order issued in direct conflict with such a Vermont order would be entitled to full faith and credit in other states and, by virtue of the PKPA, *in Vermont*. Thus, if Vermont moves to assert jurisdiction when its order is not entitled to full faith and credit, the mother has every incentive to start a proceeding in Utah and refuse to comply with any Vermont order. To ignore these realities is likely to entangle this child in a web of proceedings satisfactory to no one.

In *Shute*, we overruled earlier cases holding that the UCCJA expressed "no clear preference for home state jurisdiction." *Shute*, 158 Vt. at 248, 607 A.2d at 894.[3] This case gives us the opportunity to further explain the significance of our actions in *Shute* to our construction of the UCCJA. In light of the PKPA preference for home state jurisdiction, we hold that it is not normally in the best interest of the child for Vermont to exercise jurisdiction to determine the custody of a child whose home state or recent home state is other than Vermont. See 15 V.S.A. § 1032(a)(2); see also Coombs, *supra*, at 851 (arguing

---

[3] The cases are *Meyer v. Meyer*, 148 Vt. 65, 67, 528 A.2d 749, 750 (1987), which is factually similar to this case because there were no out-of-state proceedings, and *Duval v. Duval*, 149 Vt. 506, 513, 546 A.2d 1357, 1361–62 (1988). Today we accept the construction of the UCCJA rejected in those cases. In neither case was the Court aware of the existence or terms of the PKPA and its effect on jurisdiction.

that this interpretation of the UCCJA was always intended in the context of initial proceedings). Further, we hold that Vermont is normally an inconvenient forum to determine the custody of a child who has a home state other than Vermont. See 15 V.S.A. § 1036(a) (court with jurisdiction may decline to exercise jurisdiction if court finds that it is an inconvenient forum); see also 28 U.S.C. § 1738A(c)(2) (primacy of home-state jurisdiction). In such a case, an appropriate remedy is to dismiss the Vermont proceedings. 15 V.S.A. § 1036(e). Any exceptions to these rules—for example, when the home state declines jurisdiction—must be narrow and extraordinary.

■ When the UCCJA is properly construed, the issue raised by the father becomes irrelevant. Although the PKPA does not preempt the UCCJA in the circumstances of this case, we construe the UCCJA consistent with the policies of the PKPA to avoid any conflict. The practical significance of this holding is that the home-state preference of the PKPA applies in initial custody determinations as well as in modification or enforcement proceedings involving the courts of more than one state. If a child has a home state other than Vermont at the relevant time periods, ordinarily the Vermont courts will lack subject matter jurisdiction over the custody proceeding.

■ The father next argues that the mother waived any jurisdictional defect by voluntarily submitting to the jurisdiction of Vermont courts at the time of the divorce. This argument was addressed in *Shute* when the noncustodial parent argued that the custodial parent had agreed to Vermont jurisdiction. We held that the defect could not be waived because "[s]ubject matter jurisdiction cannot be conferred by agreement or consent of the parties when it is not given by law." *Shute*, 158 Vt. at 248, 607 A.2d at 894. We also note that neither the UCCJA nor the PKPA specifically recognizes waiver or agreement as a ground to establish jurisdiction. We conclude that jurisdiction was not established by waiver in this case.

■ The father's final argument is that Vermont has jurisdiction even if the home-state-preference rule of the PKPA is in force. To find jurisdiction, we must find that the circumstances required by the UCCJA, and indirectly the PKPA, are present at the commencement of the custody proceeding. *Peloso v. Bot-*

*kin*, 144 Vt. 461, 464, 479 A.2d 156, 158 (1984). There are three relevant points in time when we might find that a proceeding was commenced. See 28 U.S.C. § 1738A(c)(2)(A) (home state jurisdiction determined at time of "commencement of the proceeding"); 15 V.S.A. § 1032(a)(1) (same). They are (1) the date of the commencement of the divorce, (2) the date the father filed the initial motion to modify, and (3) the date the father filed his renewed motion to modify on remand from this Court. The father has argued that the family court had jurisdiction on the latter two dates.

▪ Vermont was not the home state of the child on any of these dates. On the first date, New Hampshire was the home state of the child. There is nothing to suggest that this was an extraordinary situation for which we should carve out an exception to the rule of home-state primacy under the PKPA in order to find that Vermont had jurisdiction to adjudicate custody of the child at that time. Thus, in accordance with our earlier holding, it was not in the best interest of the child for Vermont to assume jurisdiction at that time, and Vermont was an inconvenient forum to determine custody of the child. Because there was no subject matter jurisdiction for determining custody based on the divorce filing, the father cannot rely on the underlying action for jurisdiction over his motion to modify. See 28 U.S.C. § 1738A(d) (when state has made child custody determination "consistently with the provisions of this section," jurisdiction may continue if state remains residence of child or any contestant and jurisdiction is proper under UCCJA).

The second date is August 14, 1991, when the father filed his initial motion to modify the custody decision. At that time, the mother was temporarily living in New Hampshire and the child was visiting the father in Vermont. The trial court found that the home state of the child on that date was Maine because she had lived over six months with the mother in that state and was away on a period of "temporary absence." 15 V.S.A. § 1031(5); see also 28 U.S.C. § 1738A(b)(4) (periods of temporary absence are counted as part of six-month period). Although the father has questioned that ruling, asserting that the mother and Mr. Langlois withheld evidence of their criminal problems in Maine, he failed to appear at a hearing, and his motion was dismissed for nonprosecution. He has not attacked that dismissal here.

The court's finding that Maine was the home state in August 1991 has become binding and cannot be contested.

The third possible date is the date the father filed his renewed motion to modify on January 14, 1992. On that date, the mother and the child were residing in Utah but had done so for less than six months. Further, over six months had elapsed since the mother and the child had resided in Maine. The duration of their residence in New Hampshire was less than six months. Thus, the child had no home state on that date, and there is nothing in the PKPA or the UCCJA, as we have interpreted these statutes, to prevent Vermont's assertion of jurisdiction if grounds to do so otherwise exist. See 28 U.S.C. § 1738A(c)(2)(B) ("best interest" jurisdiction may be asserted if the child has no home state and none within the previous six months).

The trial court did not consider the date of the renewed motion as the time of commencement because it focused erroneously on the date of the divorce filing. Acknowledging that the date of the motion to modify can be considered the date of commencement for purposes of the UCCJA or PKPA,[4] the mother argues that only August 14, 1991, can be considered the proper date because relitigation of jurisdiction is inconsistent with the purposes of the UCCJA and PKPA. We do not find either the court's reasoning or the mother's argument persuasive. The controlling statutes adopt residency and temporal tests to determine the existence of jurisdiction. If a child moves from place to place, as this one has, the proper forum to determine custody will change as moves are made. The fact that the Vermont court did not have jurisdiction at one time should not foreclose the court from taking it when circumstances change. Indeed, failure to take jurisdiction will undermine the statutory purpose to adjudicate a custody dispute in the court best suited to do so. See 1979, No. 136 (Adj. Sess.), § 1(3) (statement of purposes of UCCJA).

---

[4] See *Boisvert v. Boisvert*, 143 Vt. 445, 448, 466 A.2d 1184, 1186 (1983); *Umina v. Malbica*, 538 N.E.2d 53, 57 (Mass. Ct. App. 1989). This rule does not control, however, if a state "has made a child custody determination consistently with the provisions of this section" and therefore has continuing jurisdiction to consider a motion to modify. See 28 U.S.C. § 1738A(d) (requirements for continuing jurisdiction).

The family court originally held that "best interest" jurisdiction did not exist in Vermont to adjudicate the father's motion to modify custody and that Vermont was an inconvenient forum. Circumstances have changed significantly since that determination was made. The court's more recent findings indicate that it would have reconsidered these conclusions but thought that it could not do so because of the *Shute* decision. Having held that *Shute* presents no barrier to a new evaluation of the circumstances, we remand to the family court.

Unfortunately, despite the need for certainty in the child's living environment, we can decide only whether there was a jurisdictional bar to the court acting some twenty-one months ago. On remand, the family court must determine whether adjudication of this custody contest in Vermont is presently in the best interest of the child, for the reasons specified in 15 V.S.A. § 1032(a)(2), and whether Vermont is the convenient forum, 15 V.S.A. § 1036. Although the fact that the child has now established a home state in Utah is not determinative, the court should adjudicate the merits only if the current situation of the parties and the child warrant an exercise of jurisdiction.

*Reversed and remanded.*