[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action, made returnable to this Court on March 3, 1997, was commenced by the Plaintiff, Deborah Doucette (the "Plaintiff"), against the Defendant, Donald W. Murray (the "Defendant"), seeking custody of and support for the minor children born to them as a result of a relationship which has since ended. The Defendant has moved to dismiss the action on the grounds that the court lacks subject matter jurisdiction under Connecticut General Statutes ("C.G.S.") § 46b-90 et seq. (the Uniform Child Custody Jurisdiction Act or "UCCJA"). The Plaintiff claims that Connecticut has jurisdiction under (i) C.G.S. § 46b-93(a)(2) (it is in the best interest of the children that Connecticut assume jurisdiction because she and the children have a significant connection with this State and substantial evidence is available here concerning the children's present or future care, protection, training and personal relationships); (ii) C.G.S. § 46b-93(a)(3) (the children are physically present in the State of Connecticut and an emergency exists necessitating their protection because they have been subjected to or threatened with mistreatment or abuse); and (iii) the doctrine of forum non conveniens (contending that, comparatively speaking, the State of Connecticut is a convenient forum and the State of New York [the alternative jurisdiction] is an inconvenient forum).
The following facts, all of which are undisputed, are relevant to this Court's disposition of the pending motion. The minor children, Danielle and Krystal Murray, born on November 9, 1994, are the issue of the Plaintiff and Defendant. Following their birth, the children resided continuously on Fisher Island in the State of New York until December, 1996. Plaintiff's Custody Affidavit, dated March 3, 1997. At that time, the Plaintiff and minor children moved to Groton, Connecticut, where they were residing at the time Plaintiff commenced this action in March, 1997. The Defendant filed his motion to dismiss on March 31, 1997.
In addition to the foregoing, the parties presented evidence (principally in the form of their respective testimony), concerning the nature and extent of the children's contacts with the State of Connecticut and the State of New York, respectively. The claims of the parties in this regard are occasioned by the unique setting of Fisher Island, to wit: although located within the geographic boundary of the State of New York, it lies in close proximity to the State of Connecticut and many of its CT Page 7689 residents look to and rely upon Connecticut suppliers and providers for needed goods and services. Hence, the Plaintiff has presented evidence, both in the form of an affidavit as well as testimony before this Court, that many of her family members (with whom the children are allegedly close) live in the State of Connecticut; that she and the children came to New London on a weekly basis for a variety of necessities (banking, grocery shopping, doctors' appointments, hairdresser, etc.); that her obstetrician is located in New London and the children, but for circumstances beyond her control, were to have been born in a New London hospital; and that the children from the time of their birth have received their medical care from a New London pediatrician and all of their medical records are located in New London. The Defendant, on the other hand, disputes many of the factual claims of the Plaintiff and further alleges that most of the evidence regarding the care of the children, including the various people with whom the children have had the most contact, is available in the State of New York (on Fisher Island). For the reasons hereinafter set forth, the Court finds that none of the foregoing is relevant to its disposition of the pending motion.
The Plaintiff further contends (and for purposes of the motion, the Court will find) that this Court is far more convenient to all concerned than would be the courts of the State of New York. Specifically, the Plaintiff notes that she resides in Connecticut near New London (the situs of this Court) and the Defendant, still a resident of Fisher Island, is but 45 minutes (by ferry) from New London. She observes that, should this matter be heard in New York, the proper venue would be in the Family Court in Riverhead (located on Long Island). She states that, in order to get to the family court in Riverhead, the Defendant would have to take a ferry from Fisher Island to New London and, further, that both she and the Defendant would then each have to take a ferry from New London to Long Island (one hour and twenty minutes) with a further trip of 45 minutes by car from the ferry landing in Long Island to the courthouse in Riverhead. While it might be far easier for the parties to get to the courthouse in New London, this Court, for the reasons set forth below, again finds this fact to be irrelevant to its disposition of the motion.
The defendant claims that this Court lacks jurisdiction over this matter. "Jurisdiction involves the power in a court to hear and determine the cause of action presented to it. . . ." AndrewAnsaldi Co. v. Planning Zoning Commission, 207 Conn. 67, 73, CT Page 7690540 A.2d 59 (1988), quoting C.S.E.A., Inc. v. ConnecticutPersonnel Policy Board, 165 Conn. 448, 456, 334 A.2d 909 (1973). Specifically, defendant contends that this Court lacks jurisdiction to hear and determine custody and visitation issues involving the children. A motion to dismiss is the proper vehicle for challenging the jurisdiction of the court. Practice Book § 143, Zizka v. Water Pollution Control Authority of the Townof Windham, 195 Conn. 682, 687 (1985). A trial court's jurisdiction to make a custody determination rests upon a determination of fact made after a plenary hearing. Ozkan v.Ozkan, 18 Conn. App. 73, 77-78, 556 A.2d 628 (1989); Grynkewichv. McGinley, 3 Conn. App. 541, 546, 409 A.2d 534 (1985).
The parties have focused much of their attention on the UCCJA jurisdictional predicates set forth in C.G.S. § 46b-93. The Defendant claims that New York, not Connecticut, was the "home state" of the children at the time of the commencement of this action and, accordingly, this Court lacks what is known as "home state" jurisdiction. C.G.S. § 46b-93(a)(1)(A).[1] There appears to be no dispute that the children's home state (as defined by the UCCJA) is New York. The Plaintiff's Custody Affidavit, dated March 3, 1997, concedes that, but for the three months preceding the commencement of this action, the children always lived on Fisher Island in the State of New York. Instead, the Plaintiff argues that the jurisdictional predicate set forth in C.G.S. § 46b-93(a)(2), commonly known as "significant connections" jurisdiction, is an alternative basis for this Court's exercise of jurisdiction and stands on an equal footing with home state jurisdiction under C.G.S. § 46b-93(a)(1). In other words, Plaintiff contends that, notwithstanding that the children's home state is New York, this Court can properly exercise jurisdiction to make a custody determination if it finds, under C.G.S. 46b-93(a)(2), that it is in the best interest of the children that this Court assume jurisdiction because she and the children have a significant connection with this State and there is available here substantial evidence concerning the children's present or future care, protection, training and personal relationships. Hence, the evidence adduced by the parties regarding the children's "significant connections" to Connecticut and New York, respectively, is premised upon Plaintiff's contention that home state jurisdiction and significant connections jurisdiction are equally viable jurisdictional alternatives with neither having a priority over the other. The Court disagrees with the underlying premise. Notwithstanding the parties' focus on the UCCJA, this Court CT Page 7691 concludes that a proper determination of the motion rests upon the application of a statute cited by neither, party, to wit: the Parental Kidnapping Prevention Act (the "PKPA"), 28 U.S.C. § 1738A.
Prior to the enactment of the UCCJA and the PKPA, child custody disputes between parents residing in different states often gave rise to jurisdictional forum shopping and, concomitantly, the issuance of conflicting custody orders. As a result, the process was chaotic, expensive and inimical to the very children whose best interests the courts were purporting to protect. This untenable situation prompted the Commission on Uniform Laws to devise the UCCJA, which was subsequently enacted, in varying forms, by all 50 states and purported to provide uniform rules for determining custody jurisdiction. Meade v.Meade, 812 F.2d 1473, 1475 (4th Cir. 1987). Notwithstanding its laudable objectives, the UCCJA alone ultimately proved to be an inadequate solution to the problem of interstate custody disputes. State legislatures enacted differing variations of the UCCJA and, even in those instances where uniform provisions were adopted, state courts interpreted them differently. Meade, supra at 1475-76. Congress concluded that the problem of jurisdictional competition and conflicting custody orders had not been resolved by the UCCJA and, consequently, enacted the PKPA in 1980 for the purpose, inter alia, of establishing national standards for determining subject matter jurisdiction over custody matters.[2]
Although the provisions of the UCCJA and the PKPA overlap in many respects, there are certain differences between the two acts. One of the more notable differences is the extent to which the acts accord priority between home state jurisdiction and significant connections jurisdiction. Certain UCCJA adaptations permit either of the foregoing as alternative bases upon which courts can exercise custody jurisdiction. Indeed, in the instant case, the Plaintiff advocates such an interpretation of C.G.S. § 46b-93. She contends that the statute sets forth the various jurisdictional bases in the disjunctive and, accordingly, urges this Court to exercise jurisdiction based upon significant connections notwithstanding the absence of home state jurisdiction in Connecticut. Such a result, however, is contrary to the PKPA. Under the PKPA, significant connections jurisdiction may be exercised only if the children have no home state (as defined above).[3] The children do have a home state within the meaning of C.G.S. § 46b-92(6). It is New York. CT Page 7692
Consequently, if the Court were to accept Plaintiff's interpretation of C.G.S. § 46b-93 (that home state jurisdiction and significant corrections jurisdiction are equally viable jurisdictional predicates with neither having priority over the other), an apparent conflict would exist between that statute and the federally enacted PKPA. This conflict has been addressed by numerous other courts which, with virtual uniformity, have concluded that the language of the PKPA indicates an intent on the part of Congress to preempt the field of custody jurisdiction, Meade, supra at 1475-76; Rogers v.Rogers, 907 P.2d 469 (Alaska 1995); Barndt v. Barndt,580 A.2d 320 (Pa.Super. 1990); Matter of Adoption of Child by T.W.C.,636 A.2d 1083 (N.J.Super. 1994); and have accorded precedence to the PKPA over conflicting state law in accordance with the Supremacy Clause. U.S. Const. Art. VI; Shute v. Shute, 607 A.2d 890 (Vt. 1992), Wilcox v. Wilcox, 862 S.W.2d 533 (Tenn.App. 1993). This Court believes that, based upon the foregoing, it is constitutionally bound to adhere to the requirements of the PKPA. Accordingly, the Court concludes that New York, as the home state of the children, has jurisdiction over this matter.
It is noted that no action is presently pending in the State of New York.[4] Consequently, in the absence of a pending proceeding in the children's home state, it might be argued that the PKPA does not preclude this Court's exercise of jurisdiction. In this regard, the Court notes that the PKPA does not purport to establish the substantive basis upon which State courts can exercise jurisdiction over custody matters. That authority is conferred by the UCCJA (C.G.S. § 46-93 in the State of Connecticut). Rather, the PKPA directs itself to the issue of full faith and credit which each state is to accord to custody orders entered in other states. See Thompson v. Thompson,484 U.S. 174, 181, 108 S.Ct. 513, 517, 98 L.Ed.2d 512 (1988) (purpose of PKPA is "to provide for nationwide enforcement of custody orders made in accordance with the terms of the UCCJA"). The issue arises, therefore, whether this Court should enter a custody order even though that order may not ultimately be accorded full faith and credit under the PKPA. The entry of an order, however, which might arguably be valid under Connecticut law but would otherwise not be entitled to full faith and credit elsewhere under the PKPA is one of the principal problems which the PKPA was designed to avoid, to wit: the entry of conflicting custody orders in different states with neither order being enforced beyond the jurisdictional limits of; either state. CT Page 7693
The absence of a simultaneously pending proceeding in the children's home state was addressed in Columb v. Columb,633 A.2d 689 (Vt. 1993). In Columb, the parent seeking the entry of such an order, while acknowledging that such an order would not be entitled to full faith and credit elsewhere under the PKPA, argued that the Vermont court should ignore this deficiency because other states were free to recognize a Vermont order even if they were not required to do so. The Court made the following observation:
 The theoretical possibility that a home state would recognize a Vermont custody order issued without the full faith and credit protection of the PKPA is overwhelmed by the reality that courts have too often failed to respect other states' custody decrees even when issued in conformity with the UCCJA and PKPA. See generally Charlow, Jurisdictional Gerrymandering and the Parental Kidnapping Protection Act, 25 Fam. L. Q. 299, 311-13 (1991) (despite passage of PKPA, "conflicting custody orders in different State courts continue to be commonplace"). Further, a home state custody order issued in direct conflict with such a Vermont order would be entitled to full faith and credit in other states and, by virtue of the PKPA, in Vermont. Thus, if Vermont moves to assert jurisdiction when its order is not entitled to full faith and credit, the mother has every incentive to start a proceeding in Utah and refuse to comply with any Vermont order. To ignore these realities is likely to entangle this child in a web of proceedings satisfactory no one.
Columb, at 692. This Court does not intend to entangle the parties' minor children in such a web.[5]
The Plaintiff has also urged this Court to exercise jurisdiction over this matter based upon C.G.S. § 46b-93(a)(3)(B) ("the child is physically present in this state and . . . it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent"). In contrast to the priority which the PKPA accords in favor of home state jurisdiction over significant connections jurisdiction, such a priority does not exist where state court jurisdiction is CT Page 7694 predicated upon the emergency jurisdiction provisions of the UCCJA. U.S.C. § 1738A(c)(2)(C). There is no dispute that the parties' minor children are physically present in this State. The Plaintiff, however, has failed to demonstrate the existence of an emergency requiring the protection of the minor children from the Defendant. The evidence simply does not bear out this claim. In urging the Court to exercise emergency jurisdiction for the protection of the minor children, the Plaintiff, in her memorandum of law, references a restraining order which she obtained against the Defendant and asks that the Court take judicial notice of that action (Deborah Doucette v. DonaldMurray, Superior Court for the Judicial District of New London at New London, Docket No. FA-97-0541154). The Court has reviewed the court file in that action and observes that (i) Plaintiff's application for relief from abuse contained no request that the relief sought be extended to the minor children (even though the standard form contains boxes which can be checked if such relief is sought as to the minor children), and (ii) the Plaintiff, at a hearing held on February 18, 1997, entered into an agreement pursuant to which the Defendant was to have access to the minor children without any supervision whatsoever. Hence, the restraining order application and proceedings related thereto fail to support plaintiff's claim that this Court should exercise emergency jurisdiction in this matter.
The Plaintiff would further have this Court exercise jurisdiction under the common law doctrine of forum non conveniens. Resort to the common law, however, is unnecessary as the UCCJA expressly creates and governs the manner in which this Court is to address an "inconvenient forum" claim. C.G.S. § 46b-97. That statute provides, in relevant part, that:
 a court which has jurisdiction under this chapter
to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
C.G.S. § 46b-97(a) (emphasis added). The Court finds that the instant case is not a proper candidate for the application of this statute. First, as the statute expressly provides, the undertaking of an "inconvenient forum" analysis presupposes that this Court has jurisdiction in the first instance. As indicated CT Page 7695 above, this Court has concluded that it does not have jurisdiction in this matter. Second, the statutory authority accorded to this Court regarding an "inconvenient forum" claim is the discretion to decline to exercise jurisdiction. In this case, the Plaintiff is advancing an inconvenient forum claim to support this Court's assumption of jurisdiction. For both of these reasons, therefore, the Court cannot engage in the analysis which Plaintiff urges and will not exercise jurisdiction in this matter based upon a claim of forum non conveniens.
For all of the reasons set forth above, the Defendant's motion to dismiss is granted. The Court notes, however, that its decision not to exercise jurisdiction at this time does not necessarily preclude the exercise of jurisdiction in the future. In the event that the Defendant fails to commence an action in the State of New York within a reasonable time, as he has indicated he will do, this State may become the home state of the minor children with the passage of time and, therefore, support the exercise of jurisdiction consistent with the provisions of the UCCJA and the PKPA. Moreover, in the event the Defendant does commence such an action in the State of New York, the Plaintiff may choose to assert an inconvenient forum claim in those proceedings and the court in that action will have discretion to exercise, or not exercise, its jurisdiction as it deems appropriate. At the present time, however, it is clear that this Court lacks jurisdiction to proceed further.
Dated this 30th day of June, 1997.
Solomon, J.