*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-087

NOVEMBER TERM, 2013

In re C.G., Juvenile } APPEALED FROM:

} 
} Superior Court, Washington Unit,
} Family Division
}
} DOCKET NO. 35-3-09 Wnjv

Trial Judge: Thomas J. Devine

In the above-entitled cause, the Clerk will enter:

Father appeals from a decision of the superior court, family division, granting a petition for permanent guardianship filed by the maternal grandmother of the minor C.G. Father contends the court improperly: (1) placed the burden of proof on father; (2) made findings unsupported by the evidence; (3) took judicial notice of certain evidence; and (4) failed to issue an order on visitation. We affirm.

The record evidence may be summarized as follows. C.G. was born in July 2000. Mother and father were not married. Parentage was established in 2002, when mother and father agreed to share parental responsibilities. The child resided principally with mother, and was adjudicated CHINS in September 2006 based on mother's inability to provide a stable environment for the child. Allegations by the child suggesting sexual abuse by father resulted in a case plan requirement that father undergo a risk-assessment evaluation, as well as parenting classes and anger-management counseling. Father refused to undergo the evaluation, and contact with the child was suspended in February 2007. Although no criminal charges were filed, DCF substantiated the claim of abuse. The child was returned to mother pursuant to a reunification plan in May 2007.

A new CHINS petition was filed in March 2009 following mother's hospitalization for prescription drug abuse. The court awarded temporary custody to the child's maternal grandparents. Mother stipulated to a merits adjudication in July 2009. Following a contested disposition hearing in September 2009, the court issued a decision rejecting father's request for custody and approving a transfer of custody to the maternal grandparents. The court found that father had not had contact with the child since early 2007 based on his refusal to undergo an evaluation to determine the risk, if any, he posed to the child. The court also noted that father had failed to participate in the other services recommended in the original case plan, was unemployed and had no stable home, and demonstrated no insight into the child's present and future developmental needs. The court also found that the child had since adapted well to her home with her maternal grandparents, and was thriving in her school and community.

In May 2012, the maternal grandmother filed a petition for permanent guardianship pursuant to 14 V.S.A. § 2664. The court held a hearing in January 2013, and shortly thereafter

issued a written decision granting the petition. Based on the case record and the testimony of the maternal grandmother and of father, the court found that all of the statutory criteria for the establishment of a permanent guardianship had been established by clear and convincing evidence. See id. § 2664(a) (providing that, before issuing order for permanent guardianship, court must find that statutory criteria have been established "by clear and convincing evidence"). While noting that the grandparents had divorced, the court found that the split was amicable, that the child continued to see her grandfather, that grandmother continued to do "an admirable job of meeting" the child's material needs of providing a loving, stable home, and that she was committed to providing for C.G. for the duration of her minority. Mother did not contest the guardianship. As to father, the court found that he had not seen or supported the child for over five years, had not engaged in the previously required risk-assessment evaluation or services, had demonstrated no interest in the child's welfare or understanding of her needs, and provided no evidence on how he would care for the child. In his testimony, father focused almost entirely on challenging the need for a risk-assessment, and invoked the Fifth Amendment on several occasions when cross-examined. The court thus concluded that father could not provide adequate care for the child or resume parental responsibilities within a reasonable period of time, and the permanent guardianship was in the best interests of the child. This appeal followed.

Father first contends the trial court improperly placed the burden of proof on him. The statute governing the creation of a permanent guardianship provides that, before issuing such an order, "the court shall find by clear and convincing evidence" that certain enumerated criteria have been met, 14 V.S.A. § 2664(a), and we have indicated that the burden of proof falls on the proponent of the guardianship to meet those requirements. See In re D.G., 2006 VT 60, ¶ 3, 180 Vt. 577 (mem.) (observing in the context of permanency planning hearing that the trial court properly "acknowledged . . . the clear-and-convincing-evidence standard" for establishing a permanent guardianship under 14 V.S.A. § 2664(a) and "defined in detail the State's burden in meeting that standard"). The record here—summarized above—demonstrates that the trial court applied the appropriate clear-and-convincing-evidence standard, and determined that the petitioner/grandmother had adduced ample evidence to establish each of the statutory requirements. Nothing in the record suggests, as father claims, that the trial court improperly shifted the burden of proof simply by observing that father had failed or refused to provide any information about his current circumstances, show any interest in C.G.'s current welfare, or demonstrate any understanding of her needs or ability to resume parental responsibilities. See In re B.C., 169 Vt. 1, 14 (1999) (recognizing that the court "did not improperly shift the burden of proof. . . .[by] noting the absence of any credible evidence that grandmother could assume the role of parent"). Accordingly, we find no merit to the claim.

Father next contends the evidence was insufficient to support the court's findings that father was not "capable or willing to provide adequate care" for the child, 14 V.S.A. § 2664(a)(1), and that returning the child to father was not "likely within a reasonable period of time." Id. § 2664(a)(2). As summarized earlier, the court found, and the record showed, that at the time of the hearing in this matter, father had not seen C.G. for over five years. He had refused for years to undergo a psychosexual evaluation or to engage in anger management or other counseling and services as a condition to supervised contact. C.G.'s grandmother testified without contradiction that, during the prior five years in which she had custody of the child, father had no contact with the child. Grandmother testified, as well, that C.G. had initially expressed fear that father would take her away, continued to express anxiety about father, and did not wish to see him. In his testimony, father maintained that his rights had been denied and that C.G. had been "coerced," but otherwise refused to address issues relating to his conduct

toward the child. The record thus amply supports the court's findings that father could not provide adequate care for the child or resume parental responsibilities within a reasonable time.

Father next asserts that the trial court improperly took judicial notice of a permanency plan adopted by the trial court in July 2008 in connection with the first CHINS proceeding involving C.G. The point of the claim is unclear. Courts generally may take judicial notice of prior court orders. See In re T.C., 2007 VT 115, ¶ 16, 182 Vt. 467 ("The existence of a prior order is an appropriate subject of judicial notice."). Further, father does not identify how he was prejudiced as a result. See In re R.W., 2011 VT 124, ¶ 17, 191 Vt. 108 (noting that we employ harmless error standard in juvenile dependency cases, and will reverse a judgment only where error affects a substantial right of the party). Father challenges none of the court's findings concerning the history and background of this case based, presumably, on this and other disposition orders contained in the case files. Accordingly, we discern no basis to disturb the judgment on this ground.

Finally, father contends the court erred in failing to issue an order either granting or denying visitation with father. In this regard, the court observed that no motion for visitation had been filed and no evidence had been presented on the question. With the understanding that the matter would be transferred to the probate division for supervision of the guardianship under 14 V.S.A. § 2664(c), the court provided that "[f]ather may petition for visitation through the Probate Division." Father contends that the court lacked the discretion to defer ruling on the issue, relying on § 2664(a), which provides that the court "shall also issue an order permitting or denying visitation, contact or information with the parent at the same time the order of permanent guardianship is issued." Father notes, as well, that the court provided for visitation with mother "in the discretion of the permanent guardian." We do not necessarily agree that the statute requires a ruling regardless of the absence of a request for visitation or a record adequate to address the subject. We need not, however, resolve the issue in the absence of any demonstrated prejudice to father, who remains free to petition for visitation in the probate division.

Affirmed.[*]

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice

---

[*] Father's motion to strike portions of grandmother's brief for failure to include references to the record is denied.

3