726 A.2d 45 (1999)
In re B.C.
No. 98-341.
Supreme Court of Vermont.
January 8, 1999.
*47 Michael Rose, St. Albans, for appellant Custodial Guardian.
Charles S. Martin of Martin & Associates, Barre, for appellant Mother.
William H. Sorrell, Attorney General, Montpelier, and Jody A. Racht and Martha E. Csala, Assistant Attorneys General, Waterbury, for appellee.
Present AMESTOY, C.J., and DOOLEY, MORSE, JOHNSON and SKOGLUND, JJ.
MORSE, J.
Mother and grandmother of four-year-old B.C. appeal the family court's order terminating their parental rights. They argue that the family court lacked jurisdiction over the neglect and termination proceedings, and that the court's findings do not support the termination order. We affirm, concluding that the family court had jurisdiction to render the termination order, and that the court's findings support the order.
Mother was seventeen years old and a resident of Massachusetts when B.C. was born on January 22, 1994. During the fall of 1995, the Massachusetts Department of Social Services (DSS) became involved with the family after it became apparent that B.C. was a "failure-to-thrive" baby. Evaluations revealed that at age twenty-two months B.C weighed only twenty-one pounds, placing him in the fifth percentile for children that age. Mother's chaotic life, her inability to interact favorably with the child, and caloric deprivation were identified as the causes of the child's condition. B.C.'s condition initially improved but then regressed by the spring of 1996, at which time mother was homeless and caring for her new baby, who was born in the fall of 1995. On May 23, 1996, in a Massachusetts probate court proceeding, mother voluntarily relinquished guardianship of B.C. to her mother, who had been living in Vermont.
In July 1996, approximately six weeks after being appointed as B.C.'s guardian, grandmother returned to Vermont with the child. In the ensuing two months, B.C. and grandmother lived either in her car or in one of several residences in the St. Alban's area. One day in early September, grandmother left B.C. with two girls she knew and then failed to pick the child up later that day as planned. The next day the former foster mother of one of the girls called the Department of Social and Rehabilitation Services (SRS), and an emergency petition was filed alleging that B.C. was a child in need of care or supervision (CHINS). Although B.C. was nearly three years old at that time, the foster mother reported that he did not seem to be familiar with solid food. Apparently, his primary source of nourishment had been a nutritional supplement. The child's teeth were seriously decayed, and an examining physician concurred with the prior failure-to-thrive diagnosis.
B.C. remained with the foster mother. In November 1996, the Franklin Family Court found B.C. to be a child in need of care or supervision. Mother came to Vermont that same month to attend a court hearing and express her desire to have B.C. returned to her in Massachusetts. In December 1996, SRS requested that DSS perform a home study to assess whether and under what circumstances B.C. could be safely returned to his mother in Massachusetts. Following the disposition hearing held in January and February 1997, the family court placed B.C. in SRS custody and adopted SRS's plan to reunify B.C. with his mother or grandmother conditioned upon completion of a number of services.
After the Massachusetts home study was completed in April 1997, DSS refused to recommend placement of B.C. with mother because she was living with her father, who was on the Massachusetts registry for having *48 physically and sexually abused her when she was a child. Based on mother's refusal to leave her father's home and come to Vermont, and her failure to follow through with visitations and case plan services, SRS filed a supplemental disposition report in May 1997 recommending termination of parental rights (TPR).
Mother moved to Vermont in June 1997, the same month that SRS filed its petition to terminate her parental rights. SRS offered mother services designed to allow her to develop a relationship with B.C., and arranged liberal visitation between her and B.C., but she refused the services and did not regularly take advantage of opportunities to visit B.C. In March 1998, after the family court rejected SRS's argument that the court's disposition order had terminated grandmother's status as guardian of B.C., SRS filed a petition to terminate grandmother's parental rights. Grandmother responded by filing a motion to dismiss for lack of jurisdiction. Mother joined the motion, and the court denied it. Following three days of hearings held in March and April 1998, the court terminated mother's and grandmother's parental rights. The court also terminated the residual parental rights of the biological father, whose where-abouts were unknown and who did not participate in the proceedings.

I.
We first examine appellants' challenge to the family court's jurisdiction. The parties acknowledge that CHINS and TPR proceedings are subject to the Uniform Child Custody Jurisdiction Act (UCCJA), 15 V.S.A. §§ 1031-1051. See In re A.L.H., 160 Vt. 410, 413, 630 A.2d 1288, 1290 (1993) (citing 15 V.S.A. § 1031(3), which provides that term "custody proceeding" includes child neglect and dependency proceedings). Under relevant sections of the UCCJA, a competent Vermont court has jurisdiction to make or modify child custody determinations if (1) at the time of the commencement of the proceeding the child involved had been living in Vermont for six consecutive months with a parent or a person acting as a parent; or (2) it is in the child's best interest for a Vermont court to assume jurisdiction because the child and at least one other contestant have a significant connection to Vermont, and substantial evidence concerning the child is available in Vermont; or (3) the child is physically present in Vermont and needs emergency protection because of abandonment, abuse or neglect; or (4) no other state has jurisdiction under the above criteria, or another state has declined to exercise its jurisdiction, and it is the child's best interest for a Vermont court to assume jurisdiction. See 15 V.S.A. § 1032(a). The UCCJA also provides that a Vermont court may not modify the custody order of another state court unless the Vermont court has jurisdiction, and it appears to the Vermont court that the other state court either no longer has jurisdiction under the UCCJA criteria or has declined jurisdiction. See id. § 1042(a).
For the following reasons, appellants argue that none of the above UCCJA provisions permitted the family court to exercise jurisdiction over the present matter. First, because B.C. had been in Vermont for only two months when SRS filed the CHINS petition, Vermont was not his "home state" at the time of the commencement of the child neglect proceedings that culminated in the termination order. Second, because Massachusetts was the child's home state when the CHINS petition was filed, Vermont could not assume jurisdiction under the UCCJA's "best interest" alternative, which is superseded by the home state preference of the Parental Kidnapping and Prevention Act (PKPA). See 28 U.S.C. § 1738A(c)(2)(B); Shute v. Shute, 158 Vt. 242, 247, 607 A.2d 890, 893 (1992). Moreover, appellants argue, even if the PKPA does not preempt the UCCJA in this case, see A.L.H., 160 Vt. at 413 n. 2, 630 A.2d at 1290 n. 2 (courts are divided on whether PKPA applies to neglect and dependency proceedings), neither the evidence nor the court's findings support any claim that B.C. had a substantial connection to Vermont at the time the CHINS proceeding commenced or that substantial evidence concerning B.C. was available in Vermont. Third, while appellants concede that the family court may have had jurisdiction to issue temporary orders to protect B.C. under the UCCJA's emergency alternative, they contend *49 that any assumption of jurisdiction under this provision did not authorize the court to make permanent custody determinations. See id. at 415, 630 A.2d at 1291. Finally, they assert that the Massachusetts probate court never declined to exercise its continuing jurisdiction over a matter in which it had previously issued a custody determination.
Based on these arguments, appellants ask this Court to vacate the CHINS, disposition, and termination orders even though they did not challenge the family court's exercise of jurisdiction until eighteen months after SRS filed the CHINS petition and placed B.C. in his current foster home, thirteen months after the court issued its initial disposition order, and nearly ten months after SRS filed its petition to terminate mother's parental rights. Not surprisingly, the law does not support their belated challenge to the court's jurisdiction.
Appellants' arguments erroneously focus on the family court's exercise of jurisdiction during the CHINS and disposition proceedings. They fail to acknowledge that Vermont was B.C.'s home state at the time of the commencement of the TPR proceeding, the proceeding that is the subject of this appeal. Unless termination of parental rights is sought at the initial disposition hearing, a TPR petition commences a new proceeding to modify the previous disposition order based on changed circumstances. See 33 V.S.A. § 5532(a). "For purposes of the UCCJA, a `proceeding' commences with the filing of a new petition for custody or modification of a custody determination." Matthews v. Riley, 162 Vt. 401, 406 n. 4, 649 A.2d 231, 235 n. 4 (1994); see Columb v. Columb, 161 Vt. 103, 112, 633 A.2d 689, 694 (1993) (by erroneously focusing on date of original divorce filing, trial court failed to consider date of renewed motion to modify as time of commencement of proceeding for purposes of UCCJA and PKPA). As we stated in Columb:
If a child moves from place to place, ... the proper forum to determine custody will change as moves are made. The fact that the Vermont court did not have jurisdiction at one time should not foreclose the court from taking it when circumstances change. Indeed, failure to take jurisdiction will undermine the statutory purpose to adjudicate a custody dispute in the court best suited to do so.
161 Vt. at 112, 633 A.2d at 694[*]; see Peloso v. Botkin, 144 Vt. 461, 464, 479 A.2d 156, 158 (1984) (criteria supporting jurisdiction under UCCJA must be present at time of initiation of "particular" custody proceeding).
Appellants argue, however, that we cannot focus solely on the circumstances present at the time that the TPR proceeding commenced because the family court's jurisdiction over a TPR proceeding depends on the existence of valid underlying CHINS and initial disposition orders. According to appellants, in this case the underlying CHINS and initial disposition orders are void for lack of subject matter jurisdiction, and thus there was no jurisdictional basis for the family court to issue its termination order. We disagree.
As appellants concede, the family court had the authority under the UCCJA's emergency provision to exercise its jurisdiction over the initial proceedings in this matter because B.C. was physically present in Vermont and needed protection from his guardian's neglect. See 15 V.S.A. § 1032(a)(3)(B). Although we have held that jurisdiction under the UCCJA's emergency provision "does not authorize courts to make permanent custody determinations," see A.L.H., 160 Vt. at 415, 630 A.2d at 1291, neither the CHINS nor the initial disposition orders in this case were permanent custody decisions. Therefore, *50 those orders were not void and could form the basis for the court's later termination order.
Even if we were to assume that the UCCJA's emergency provision did not permit the family court to issue its CHINS and disposition orders, we would not conclude that the orders were void. Because appellants never appealed the CHINS or disposition orders, they can prevail on their argument that the orders are void only if they satisfy the criteria for obtaining relief from a final judgment. See V.R.C.P. 60(b)(4) (court may relieve party from final judgment if judgment is void). "In the context of Rule 60(b)(4), a lack of subject-matter jurisdiction for the purpose of making a judgment void means a court's lack of jurisdiction over an entire category of cases, not whether a court makes a proper or improper determination of subject-matter jurisdiction in a particular case." 12 J. Moore, et al., Moore's Federal Practice § 60.44[2][a], at 60-142 (3d ed.1998). Thus, when a court has jurisdiction over a general category of case, the fact that the court errs in exercising its jurisdiction in a particular case within that general category "is generally not sufficient to make the resulting judgment void for lack of subject-matter jurisdiction." Id. § 60.44[2][b], at 60-142.
Without question, the family court possessed subject matter jurisdiction over the general type of controversy before it in this case. The family court has "exclusive jurisdiction over all proceedings concerning any child who is or who is alleged to be ... a child in need of care and supervision." 33 V.S.A. § 5503(a); see In re B.J.C., 149 Vt. 196, 198, 540 A.2d 1047, 1049 (1988) (noting that Juvenile Procedure Act contains no express jurisdictional residency limitations that would frustrate foremost goal of protecting children). This fact is not negated by any jurisdictional limitations imposed by the UCCJA. Those limitations "are not equivalent to declarations of subject matter jurisdiction, but rather are refinements of the ancillary capacity of a trial court to exercise authority over a particular case." Williams v. Williams, 555 N.E.2d 142, 145 (Ind.1990). Rather than directly grant subject matter jurisdiction over a general category of cases, the UCCJA imposes territorial limitations on the court's exercise of its jurisdiction. See B.J.P. v. R.W.P., 637 A.2d 74, 78-79 (D.C. 1994) (purported lack of subject matter jurisdiction based on territorial considerations under UCCJA and PKPA are analytically similar to venue and do not go to power of court to adjudicate type of controversy); Restatement (Second) of Judgments § 11 (1982) A (contrasting true subject matter jurisdiction, which refers to court's authority to adjudicate type of controversy, with territorial jurisdiction, which depends on state's relationship to thing or status). Thus, the CHINS and disposition orders in this case are not void for lack of subject matter jurisdiction.
There are important policy reasons for voiding judgments under Rule 60(b)(4) only in the narrowest of circumstances. See Restatement (Second) of Judgments § 11 cmt. e (different considerations require defining subject matter jurisdiction narrowly for purposes of according finality to judgment in proceeding that has already run its course). Automatically voiding prior judgments stemming from an erroneous exercise of jurisdiction under the UCCJA not only would undermine the principle of finality, but would permit litigants to contest the merits of a controversy in a convenient forum while reserving the "jurisdictional card" in the event of an unfavorable decision. See B.J.P., 637 A.2d at 79; In re Denio, 158 Vt. 230, 235, 608 A.2d 1166, 1169 (1992).
A court's determination of whether to exercise its jurisdiction under the UCCJA is a highly context-sensitive question that often turns on difficult judgment calls such as whether the court should assume jurisdiction in the best interests of the children. See B.J.P., 637 A.2d at 79. Such determinations, even if ill-advised, will rarely rise to the level of an improper usurpation of power. Unless a court has usurped power not accorded to it, its exercise of subject matter jurisdiction is binding in subsequent proceedings as long as the jurisdictional question was litigated and decided or the parties had an opportunity to contest subject-matter jurisdiction but failed to do so. See 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal *51 Practice and Procedure § 2862, at 331 (2d ed.1995); see also Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir.1986) (absent clear usurpation of power, collateral attack on court's exercise of subject matter jurisdiction is barred by principles of res judicata); Restatement (Second) of Judgments § 12 cmt. d (even if issue of subject matter jurisdiction has not been raised and determined, final judgment ordinarily should be treated as wholly valid if controversy has been litigated in any other respect). This approach is consistent with the modern trend "to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction." Restatement (Second) of Judgments § 11 cmt. e; cf. Springfield Teachers Ass'n v. Springfield Sch. Dirs., 167 Vt. 180, 189-90, 705 A.2d 541, 547 (1997) (jurisdictional challenges to arbitration awards are not exempt from statute limiting time for motions to vacate such awards); Denio, 158 Vt. at 234-35, 608 A.2d at 1169 (requiring preservation of jurisdictional issues in administrative forum).
We recognize that in previous cases we have indicated that the UCCJA concerns subject matter jurisdiction that may be challenged at any time. Each of those cases, however, is distinguishable from the present case. In Boisvert v. Boisvert, 143 Vt. 445, 466 A.2d 1184 (1983), the trial court granted a motion to set aside its earlier judgment modifying a custody decree, ruling that it had not had subject matter jurisdiction under the UCCJA to issue the order. In affirming the decision, we stated that the UCCJA generally concerns subject matter jurisdiction, and that a lack of subject matter jurisdiction may be raised at any time. See id. at 447, 466 A.2d at 1185. Nevertheless, while we affirmed the trial court's decision to set aside its earlier judgment, we did not hold that the judgment was automatically void, as opposed to voidable, for lack of jurisdiction under the UCCJA. Relief from the earlier judgment was appropriate because the child and custodial parent had left Vermont following the divorce and the noncustodial parent had also eventually moved from Vermont. Further, although it is not absolutely clear from the decision, it appears that the motion to set aside the court's modification order was filed before custody of the child was actually transferred under the order. In any event, the decision in Boisvert merely demonstrates that a judgment may be voidable for lack of UCCJA jurisdiction under certain circumstances; it does not undermine our analysis that in this case the court's CHINS and disposition orders were not void and thus served as a basis for the TPR order.
Two other cases require mentioning. In Shute, 158 Vt. at 248, 607 A.2d at 894, this Court ruled that the trial court did not have continuing jurisdiction to modify its original custody decree, which was not made consistently with the PKPA, and that the jurisdictional deficiency could not be cured by the parties' stipulation in the original order to resolve any future custody disputes in Vermont. In that case, however, the family court had no jurisdiction over the modification proceeding because the child had been living in Connecticut for the previous three years and had closer connections to that state. In Columb, 161 Vt. at 110, 633 A.2d at 693, we repeated our holding in Shute that subject matter jurisdiction could not be conferred by agreement or consent of the parties, and further noted that "neither the UCCJA nor the PKPA specifically recognizes waiver or agreement as a ground to establish jurisdiction." Id. We also stated that the family court did not have continuing jurisdiction under the PKPA to consider a motion to modify a divorce order that had not been made in compliance with the PKPA. See id. at 111, 633 A.2d at 693. Nevertheless, we held that the family court should have considered the date of the motion to modify as the time of commencement of the proceedings. See id. at 112, 633 A.2d at 694 (fact that court did not have jurisdiction at one time should not foreclose it from taking jurisdiction when circumstances changed). These decisions are not contrary to our analysis here. The issue in the present case is not whether the family court had continuing jurisdiction under the PKPA, but rather whether the CHINS and disposition orders were void for lack of subject matter jurisdiction, and whether the family court had jurisdiction over the TPR proceeding.
*52 Grandmother also argues that even if the CHINS and disposition orders are valid, Vermont could not have been considered the home state at the time of commencement of the TPR proceeding because SRS was not a "person acting as a parent." 15 V.S.A. § 1031(5) ("home state" is state where child lived with parent or "a person acting as parent" for six consecutive months immediately preceding time involved); id. § 1031(9) ("persons acting as parent" means person other than parent who has physical custody of child as result of court order or claim to custody). Notwithstanding our brief statement in A.L.H., 160 Vt. at 414, 630 A.2d at 1290, that SRS is not a "contestant" under the UCCJA, see 15 V.S.A. § 1031(1) ("contestant" is person, including parent, claiming custody or visitation rights with respect to child), we conclude that SRS may be considered "a person acting as a parent" under the UCCJA. Our conclusion in A.L.H. relied on a Nebraska case in which the court determined that the PKPA does not apply to child neglect and dependency proceedings. As we have already noted, the UCCJA explicitly applies to such proceedings. Given this fact, it would be incongruous to hold that the "home state," as defined in the UCCJA, does not include the state where the child has been living for the requisite period in the custody of SRS with the same foster parent, and where all of the family members seeking custody have been living. See In re G.F., 142 Vt. 273, 279, 455 A.2d 805, 808-09 (1982) (statutes should not be construed so as to render them ineffective or lead to irrational consequences).
Finally, appellants argue that the termination order must be reversed because the family court failed to communicate with the Massachusetts probate court at the initiation of the CHINS proceeding, as it was required to do, and that the court might not have retained jurisdiction had it contacted the Massachusetts court at that time. Section 1035 of the UCCJA, which concerns simultaneous proceedings in other states, requires a court of this state to communicate with another state if, based on the parties' pleadings or other information, it learns that there are pending custody proceedings in the other state. In this case, the Massachusetts guardianship proceeding was not "pending" at the time the CHINS petition was filed in Vermont. See Cricenti v. Weiland, 44 Mass. App.Ct. 785, 694 N.E.2d 353, 356 (1998) (proceeding is no longer "pending" under UCCJA following court's custody determination). Under § 1036 of the UCCJA, a court considering whether it is the appropriate forum to adjudicate a child custody matter over which it has jurisdiction "may" communicate with a court of another state before declining or retaining jurisdiction. As indicated by its permissive language, this section does not mandate communication between the courts.
Even assuming that these provisions compelled communication in this case, we have held that a trial court's failure to communicate with a court in another jurisdiction pursuant to the UCCJA does not necessarily require reversal. See In re Cifarelli, 158 Vt. 249, 257, 611 A.2d 394, 399 (1992); Duval v. Duval, 149 Vt. 506, 515, 546 A.2d 1357, 1363 (1988). Because appellants never challenged the family court's jurisdiction during the CHINS and disposition proceedings, they never argued during those proceedings that the court was required to communicate with the Massachusetts probate court that issued the guardianship order.
Appellants surmise that if the family court had communicated with the Massachusetts court at the time the CHINS petition was filed, jurisdiction would have been transferred to Massachusetts. We find this to be a doubtful proposition, particularly considering that the child and his guardian had been living in Vermont at the time, the neglect that led to the CHINS petition had occurred in Vermont, and SRS was in contact with its sister state agency in Massachusetts, which apparently did not believe that it was either necessary or advisable to remove the matter to Massachusetts. Under the circumstances, appellants' belated arguments concerning the family court's failure to communicate with Massachusetts do not warrant setting aside the CHINS and disposition orders.
Although reversal is not required, we are concerned that the appropriate mechanisms be in place to assure that in cases such as *53 this the family court is fully apprised from the beginning of relevant proceedings that have taken place or are pending in other jurisdictions. Section 1037(a) of Title 15 requires every party in a custody proceeding to provide under oath in the first pleading information as to "the child's present address, the places where the child has lived within the last five years, and the names and present addresses of the persons with whom the child has lived during that period." Rule 4(b)(1)(A) of the Rules for Family Proceedings implements this provision by requiring that a divorce or abuse-prevention complaint that involves custody issues contain the information required under the UCCJA. Apparently, we never adopted a similar rule with respect to child neglect and dependency proceedings. Nevertheless, the statute clearly imposed upon SRS and the state's attorney the duty to provide this information, and yet they failed to do so even after the information became available.
If the information required under Rule 4(b)(1)(A) had been presented to the family court along with the CHINS petition in this case, the court would have considered its jurisdiction and may have communicated with the Massachusetts probate court. We note, however, that the affidavits attached to the CHINS petition should have alerted the court that B.C. had been living in Massachusetts until a few weeks before the petition was filed, and thus that a jurisdictional issue was present. In any event, as stated above, appellants have failed to show that the CHINS and disposition orders should be set aside because of the lack of communication between the courts in this instance.
In sum, because we conclude that the underlying CHINS and disposition orders are not void, and because B.C.'s home state was Vermont at the time of the commencement of the TPR proceeding, the family court had subject matter jurisdiction to issue its termination order. We need not consider whether the PKPA applies to child neglect and dependency proceedings because, assuming that it does, its home state preference was satisfied here. See 28 U.S.C. § 1738A(c)(1)-(2)(A). Further, assuming that the Massachusetts court's guardianship order was a custody determination, and that the termination order modified that determination, Massachusetts no longer had continuing jurisdiction of the matter at the time of the TPR proceeding, see § 1738A(d), and thus the family court was free to modify the guardianship order. See § 1738A(f) (court may modify custody determination of another state if court has jurisdiction to make order and other state no longer has jurisdiction).

II.
Mother argues that the family court's findings do not justify its conclusion that she will be unable to resume her parental duties within a reasonable period of time. In mother's view, the court terminated her parental rights based merely on speculation that B.C.'s marked improvement while in foster care would be threatened if he were returned to her. We find no merit to this argument.
The family court found that (1) mother continued to deny that she was responsible for B.C.'s failure to thrive before he was placed in his grandmother's care; (2) for a significant period of time, mother had elected to remain in Massachusetts with her father, a registered child abuser, rather than come to Vermont to facilitate reunification with B.C.; (3) while she was in Massachusetts, mother was inconsistent in keeping appointments for telephone contact with B.C. and in making arrangements with SRS for visits with B.C. in Vermont; (4) after mother moved to Vermont, SRS received reports that her younger son had a suspicious bruise and was being left with a substantiated sex offender; (5) even after SRS changed the case plan goal to termination in May 1997, it would have reversed that recommendation and sought reunification, but mother made no commitment to establishing a relationship with B.C.; (6) B.C. had made significant progress while in foster care; (7) mother would be unable to care for her younger son without the support of community services; (8) in the eighteen months that had elapsed since B.C. was taken into custody, mother's parental skills had not improved significantly; and (9) mother would be unable to care for both of her children, particularly given B.C.'s needs. These unchallenged findings and conclusions *54 amply supported the court's termination order.

III.
Grandmother contends that the family court improperly shifted the burden to her to prove that she would be able to care for B.C. within a reasonable period of time. Noting that an SRS caseworker conceded having insufficient contact with grandmother to assess her present parental skills, grandmother asserts that the court turned this lack of evidence against her by finding that there was no credible evidence that she had improved her parental skills, overcome her drug problems, or would be an appropriate care giver within the foreseeable future. Grandmother's argument presumes that she had residual parental rights by virtue of the Massachusetts guardianship order, and that SRS had the burden of showing by clear and convincing evidence that those rights should be terminated. These assumptions are doubtful, at best, considering that 33 V.S.A. § 5528(3) gives the family court the authority to transfer guardianship of a child found to be in need of care or supervision to SRS or any individual qualified to care for the child. See In re J.D., 165 Vt. 440, 443, 685 A.2d 1095, 1098 (1996).
Even assuming that the Massachusetts guardianship order had not been superseded by the family court's disposition order, and that grandmother had residual parental rights to B.C., the family court did not improperly shift the burden of proof. In noting the absence of any credible evidence that grandmother could assume the role of parent, the court was merely commenting on the state of the evidence, not signaling that it was grandmother's burden to prove her fitness. Further, grandmother fails to acknowledge that SRS's ignorance of her recent circumstances was the result of her absenting herself from the case plan at the time of the initial disposition hearing. Grandmother failed to maintain contact either with SRS or B.C., despite having the opportunity to do so. Grandmother's demonstrated lack of interest in B.C., coupled with her long-standing history of neglect of her own children and failure to follow through with recommended services, was more than sufficient to carry the State's burden of demonstrating by clear and convincing evidence that her ability to care for B.C. had stagnated, and that it was in B.C.'s best interests to terminate any parental rights she claimed. See In re D.B., 161 Vt. 217, 219, 635 A.2d 1207, 1209 (1993) (court may terminate parental rights when stagnation of parental ability demonstrates that resumption of parental duties unlikely within reasonable time).

IV.
Finally, grandmother argues that the court erred by failing to explain how her cocaine addiction had any adverse impact on B.C. See Hansen v. Hansen, 151 Vt. 506, 509, 562 A.2d 1051, 1054 (1989) (custody determination reversed because trial court failed to make findings supporting its conclusion that wife's extramarital affair adversely impacted children's best interests). The adverse impacts upon a child resulting from the drug addiction of the child's care-giver hardly needs explanation. Assuming an explanation was required, there was evidence of an adverse impact on B.C. Grandmother herself indicated that her failure to maintain meaningful contact with B.C. resulted from her need to isolate herself to address her drug problem. In any event, the court's termination order with respect to grandmother is supported by its findings, even absent the reference to her drug use.
Affirmed.
NOTES
[*] In a footnote in Columb v. Columb, 161 Vt. 103, 112 n. 4, 633 A.2d 689, 694 n. 4 (1993), we recognized that the date of the filing of a motion to modify would not be considered the date of the commencement of the proceeding if another state had continuing jurisdiction under the PKPA. Even if we were to apply the PKPA to this case, Massachusetts no longer retained jurisdiction after mother moved to Vermont in June 1997, the same month that SRS filed the first of its two TPR petitions and nearly a year after B.C. and his guardian moved to Vermont. See 28 U.S.C. § 1738A(d) (jurisdiction of court of another state that has made custody determination consistent with PKPA continues as long as court retains jurisdiction under its laws and such state remains residence of child or any contestant).