action as explained in *Landry v. Hubert,* 101 Vt. 111, 113, 141 A. 593, 594 (1928). Indeed, I question whether it makes sense to apply presumption jurisprudence to a determination of negligence, because the presumed "fact" is actually a conclusion of law or a mixed conclusion of fact and law. See 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5134, at 657 (1977).

In any event, I note that virtually every commentator and most jurisdictions agree that some instruction to the jury on a presumption is necessary. See *id.* § 5127, at 615; 2 McCormick on Evidence § 344, at 467 (4th ed. 1992). Our precedents require that the jury be told of the presence of an applicable safety statute. See *Campbell v. Beede,* 124 Vt. 434, 438-39, 207 A.2d 236, 240-41 (1965). The issue is what the jury should be told.

Every alternative instruction to the jury has strengths and weaknesses. See 2 McCormick on Evidence § 344, at 467-69. Although I favor a negligence per se rule as adopted by the Restatement (Second) of Torts, see *Marzec-Gerrior,* 164 Vt. at 575-76, 674 A.2d at 1252, the alternative sought by plaintiff in this case is far better than what was charged, or what we have typically affirmed. A number of states have adopted plaintiff's alternative. See *Thornton v. Pender,* 377 N.E.2d 613, 621 (Ind. 1978); *Zeni v. Anderson,* 243 N.W.2d 270, 276-79 (Mich. 1976); *Waugh v. Traxler,* 412 S.E.2d 756, 759-60 (W. Va. 1991). It is exactly the alternative required by *Landry v. Hubert,* 101 Vt. at 113, 141 A. at 594.

Whether or not we adopt a rule that explains the safety statute to the jury as a rebuttable presumption, we should not affirm the charge given in this case. Plaintiff had two objections to the charge — it didn't explain the rebuttable presumption, and it allowed the jury to ignore the rules of the road for any reason. The latter objection was clearly correct. Especially given the nature of the state policy interests in uniform rules of the road, we cannot support an instruction that allows the jury to ignore automotive safety statutes for no reason at all. Such an instruction allows the jury to determine the applicable law, or to ignore the actual law and apply its own view of what the law should be. In either case, the jury is acting outside its proper role as the fact-finder, applying the facts to the law given to it by the judge. We should at least insist that the charge state that violation of a safety statute is evidence of negligence, as required by *Gilbert v. Churchill,* 127 Vt. 457, 461, 252 A.2d 528, 530 (1969).

This case represents an important opportunity to pull our law on safety statutes in negligence cases from the chaos that now surrounds it. I dissent from the continuing endorsement of that chaos.

**Johnson, J.,** dissenting. I dissent for the reason that we should not affirm the jury charge in this case. Plaintiff's objections were well-taken in that the charge did not explain that proof of the violation of a safety statute creates a prima facie case of negligence, which in turn creates a rebuttable presumption of negligence and shifts the burden of production to the party against whom the presumption operates. See *Bacon v. Lascelles,* 165 Vt. 214, 222, 678 A.2d 902, 907 (1996). Moreover, as Justice Dooley's dissent demonstrates, the court invited the jury to ignore the safety statutes. Either basis provides grounds for reversing the verdict.

Motion for reargument denied January 13, 2000.

**In re J.M.**

[749 A.2d 17]

No. 99-386

January 13, 2000. The parents of J.M. appeal from a family court order termi-

nating their parental rights. They contend: (1) the court lacked subject matter jurisdiction; and (2) the Department of Social and Rehabilitation Services failed to provide mother with reasonable services. We affirm.

Mother and father have an extensive history of involvement with SRS. In 1995, their two older children, N.M. and C.M., were taken into SRS custody following reports of physical abuse and drug and alcohol use by father. Both children were adjudicated CHINS based upon findings by the court that mother, who had an I.Q. in the sixties, had repeatedly refused parenting and counseling services, that father was chronically intoxicated and abusive, and that neither parent had even basic parenting skills. Parental rights were terminated in June 1998, based on the court's conclusions that the parents' circumstances had stagnated due to their refusal to accept parenting assistance and substance-abuse counseling, that neither parent could resume parental responsibilities within a reasonable period of time, and that the children had adjusted well to their foster home and were thriving. This Court affirmed the judgment. See *In re N.M.*, No. 98-299 (Dec. 31, 1998) (unpub. mem.).

During the TPR proceedings, the parents' SRS case-manager became aware that mother was pregnant. In July 1998, SRS filed a petition and affidavit setting forth the court's findings in the recently completed TPR proceedings, and seeking an order for temporary custody of the child at birth. A detention order providing for SRS custody was issued on August 26, 1998. The child, J.M., was born on September 2, 1998. Two days later, following an emergency hearing, the court again ordered temporary custody to SRS. The child was released from the hospital that day and taken into foster care, where he has remained ever since.

Following the merits hearing in January 1999, the court found by clear and convincing evidence that J.M. was CHINS. The court relied on the findings in the earlier TPR proceedings concerning N.M. and C.M., as well as evidence that since J.M.'s birth, mother had consistently rebuffed her case manager's enouragement to accept parenting, battered-women, and alcohol-abuse services. The court also found that mother had not acquired any basic parenting knowledge and skills since the previous TPR, and that domestic violence remained a significant risk to mother and child.

The State sought to terminate parental rights at the initial disposition hearing in May and June 1999. The court found that mother's parenting abilities had not changed significantly since the previous TPR proceedings, and that those abilities were inadequate to provide proper care for the child. The court also noted that the child remained at risk of abuse by father, and that mother did not comprehend the risk. In the meantime, J.M. had developed a good relationship with his foster family and was thriving. Accordingly, the court concluded that there was no likelihood either parent would be able to resume parental duties within a reasonable period of time, and terminated the parents' residual parental rights. Mother and father filed separate notices of appeal, and mother filed an appellant's brief in which father has joined.

Mother first contends the trial court lacked subject matter jurisdiction because J.M. had not yet been born, and therefore was not a "child" under our statutory scheme when the court issued its original detention order in response to the State's petition. See 33 V.S.A. § 5503(a) (family court has "exclusive jurisdiction over all proceedings concerning any child"). Although the court may have lacked jurisdiction prior to the child's birth, any error in this regard was harmless. Two days after J.M. was born, the court issued a new emergency detention order based upon the petition and

supporting affidavit outlining mother's recent history with her other children, and her complete lack of progress since. Furthermore, the merits and disposition hearings both occurred later, and evidence was adduced at both hearings concerning mother's incapacities both before and after the child's birth. The decisions cited in mother's brief, *In re Valerie D.*, 613 A.2d 748, 750 (Conn. 1992), and *State ex rel. Angela M.W. v. Kruzicki*, 561 N.W.2d 729, 736 (Wis. 1997), are distinguishable, as both concerned the validity of CHINS adjudications based upon evidence of prenatal abuse and neglect of an unborn child through the mother's use of illegal drugs.

Mother also claims that SRS failed to render adequate assistance to mother after J.M.'s birth. Although a court is not required to find that SRS made reasonable efforts to assist a parent, such assistance is a factor in determining whether SRS met its burden of showing that a parent is unlikely to be able to resume parental duties within a reasonable period. See *In re J.T.*, 166 Vt. 173, 180, 693 A.2d 283, 287 (1997). In its decision, the court clearly and reasonably relied upon mother's well-documented history of resistance to SRS services in connection with the recently-completed TPR proceedings involving N.M. and C.M.. See *E.J.R. v. Young*, 162 Vt. 219, 224, 646 A.2d 1284, 1287 (1994) (family court may rely on evidence in connection with sibling to conclude that child is CHINS). The court also noted mother's continued failure to profit from SRS services after J.M.'s birth. In this regard, the court relied upon its finding from the merits hearing that mother had continued to resist her social worker's encouragement to participate in parental-assistance services. The court also found that despite the mentoring of a parent educator during mother's visits with J.M., mother's parenting abilities remained inadequate to care for the child. Accordingly, we conclude that the evidence of SRS services was sufficient to support a finding that mother could not resume her parental duties within a reasonable period of time.

*Affirmed.*

## Geoffrey TRASK v. DEPARTMENT of EMPLOYMENT and TRAINING

[749 A.2d 1130]

No. 99-143

January 25, 2000. Claimant Geoffrey Trask appeals the Employment Security Board's dismissal of his appeal from a claims adjudicator's determination. The Board concluded that his appeal was untimely filed. Claimant now argues that (1) the appeal was timely filed; (2) he was denied due process by a five-day delay between the determination and his receipt of the decision; and (3) he was denied "prompt notice in writing" of the determination in violation of 21 V.S.A. § 1348(a). We affirm.

Claimant filed a claim for unemployment compensation benefits on January 5, 1997. On October 9, 1998, the claims adjudicator determined that claimant had erroneously received temporary workers' compensation benefits in excess of his weekly unemployment compensation benefit amount totaling $5,425.00, and was liable to repay these overpaid benefits to the Department of Employment and Training (DET). This determination was mailed by certified mail, and claimant received it on October 15, 1998. Claimant's appeal rights were stated at the end of the determination:

> YOUR APPEAL RIGHTS: This determination may be appealed within thirty (30) calendar days from the determination date