2005 VT 118

**In re N.H., Juvenile**

[889 A.2d 727]

No. 05-126

¶ 1. September 28, 2005. Mother appeals the family court's order terminating her parental rights (TPR) with respect to her fifth child, N.H. She argues that the court lacked subject matter jurisdiction over the child. We affirm.

¶ 2. Mother's parental rights with respect to her four previous children had been terminated by courts in three different states. Mother's first child was born in July 1999. After a Vermont substantiation that mother had fractured the child's arm and otherwise physically abused the child, proceedings ensued and eventually led to a termination order. Prior to the issuance of that order, mother had left Vermont for Rhode Island, where her second child was born in July 2000. That child was placed in state custody while mother returned to Vermont and entered a residential program. Before the child could be reunited with mother, mother left the residential program prematurely. The Rhode Island court eventually terminated mother's parental rights to her second child. Mother's third child was born in August 2001. A Virginia court placed the infant in state custody three weeks after her birth due to the parents' medical neglect. Parental rights were terminated when neither parent engaged in the services provided. A Virginia court also placed mother's fourth child in state custody immediately after her birth in June 2003. After two visits, the parents left Virginia, and their parental rights were eventually terminated.

¶ 3. In the spring of 2004, while mother was pregnant with N.H., mother and father were living in Burlington, Vermont. On June 3, 2004, based on its awareness of the aforementioned history, the Department for Families and Children (DCF) filed a motion for a pick-up order and a petition alleging that N.H. was a child in need of care and supervision (CHINS). The family court issued a detention order the next day. Unbeknownst to DCF, however, the parents had left for Florida a couple of weeks earlier. N.H. was born in Florida on June 10, 2004. On July 24, 2004, at the request of DCF and its Florida counterpart, a Florida court entered a shelter order for N.H. Two days later, DCF filed a request for an emergency hearing with the Chittenden Family Court. DCF brought N.H. to Vermont on July 29, 2004. The following day, the family court held an emergency hearing and placed N.H. in DCF's temporary custody. At an August 25, 2004, status conference, both parents were represented by counsel and participated via telephone. Father claimed that the parents had not fled Vermont to avoid CHINS proceedings, but rather had gone to Florida for only a two-week visit. Despite being notified, the parents did not take part in the next status conference in October 2004. Nor did they participate in the CHINS merits hearing held on November 23, 2004, notwithstanding DCF's efforts to contact them. Following the hearing, N.H. was adjudicated CHINS.

¶ 4. Shortly after the CHINS adjudication, DCF filed a TPR petition. The petition was considered at the initial disposition hearing held on January 25, 2005. The parents did not appear, but their attorney suggested that the court lacked subject matter jurisdiction over N.H. The court indicated that it would grant DCF's petition subject to briefing and its ruling on the jurisdictional question. On January 27, 2005, the Florida court declined to exercise jurisdiction over N.H. On February 10, 2005, the family court assumed jurisdiction under 15 V.S.A.

§ 1032(a)(4) (no other state has jurisdiction under relevant criteria or another state has declined jurisdiction). Six days later, the court entered a written decision terminating the parents' rights to N.H. Mother appeals, arguing that the family court lacked subject matter jurisdiction over N.H. because none of the jurisdictional requirements of the Uniform Child Custody Jurisdiction Act (UCCJA) were satisfied at the time DCF filed its initial CHINS petition or its later motion for an emergency hearing.

¶ 5. In arguing that the court lacked jurisdiction over N.H., mother reasons as follows. Jurisdictional requirements must be satisfied at the time a proceeding is commenced. See *Columb v. Columb*, 161 Vt. 103, 110, 633 A.2d 689, 693 (1993) ("To find jurisdiction, we must find that the circumstances required by the UCCJA ... are present at the commencement of the custody proceeding."). Because DCF sought termination at the initial disposition hearing, the TPR petition did not commence a new proceeding. Cf. *In re B.C.*, 169 Vt. 1, 5, 726 A.2d 45, 49 (1999) ("Unless termination of parental rights is sought at the initial disposition hearing, a TPR petition commences a new proceeding to modify the previous disposition order based on changed circumstances."). DCF filed its CHINS petition on June 3, 2004, before N.H. was born, when he was a fetus and not a "child" under the Juvenile Proceedings Act. See 33 V.S.A. § 5503(a) ("The juvenile court shall have exclusive jurisdiction over all proceedings concerning any child ... who is alleged to be ... a child in need of care or supervision ...."). According to mother, UCCJA § 1032(a) jurisdictional criteria remained unsatisfied when DCF filed its subsequent petition for emergency hearing on July 26, 2004, after N.H.'s birth, but when N.H. was still in Florida.

¶ 6. We do not find this reasoning persuasive. Commencement of a CHINS proceeding prior to a child's birth does not necessarily deprive the family court of subject matter jurisdiction. In *In re J.M.*, 170 Vt. 587, 588-89, 749 A.2d 17, 19 (2000) (mem.), the mother argued, as here, that the family court lacked subject matter jurisdiction because the CHINS petition was filed and a detention order was issued before the birth of her child. We concluded that any error was harmless because (1) two days after the child was born, the court issued a new emergency detention order; and (2) the merits and disposition hearings occurred later. *Id.* Likewise, we conclude that any initial jurisdictional error was harmless in this case. After N.H.'s birth, and upon discovering that the parents had left the state, DCF contacted its counterpart agency in Florida and obtained a Florida shelter order. Two days later, DCF sought an emergency detention hearing in Vermont. First CHINS, and eventually TPR, proceedings were held in the Chittenden Family Court. It was only at the delayed disposition hearing that the parents' attorney first suggested that the parents were challenging the Vermont family court's jurisdiction over N.H. Shortly thereafter, Florida declined to exercise jurisdiction over the matter in favor of Vermont jurisdiction, based on the child's best interest and Vermont's "closer connection with the child and his family." Therefore, Vermont's UCCJA jurisdictional requirements were satisfied because "another state ... declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction." 15 V.S.A. § 1032(a)(4).

¶ 7. We see no point in reversing the family court's decision just to have DCF file a new TPR petition following the Florida court's declination of jurisdiction. Among the general purposes of the UCCJA are to avoid jurisdictional con-

flict with courts of other states and to discourage continuing controversies over child custody in the interest of more stability and security for the child. See Title 15, chapter 19, history of Uniform Child Custody Jurisdiction Act. Neither these purposes nor the best interests of N.H. would be served by remanding the matter for further pro forma proceedings. Cf. *In re D.T.*, 170 Vt. 148, 154, 743 A.2d 1077, 1082 (1999) ("remand would amount to nothing more than an empty formality"). Notably, the UCCJA does not directly grant subject matter jurisdiction over a general category of cases, but rather imposes territorial limitations on the court's exercise of its jurisdiction. *B.C.*, 169 Vt. at 7, 726 A.2d at 50. Hence, the family court has subject matter jurisdiction over the general type of controversy presented by this case, and none of its orders were void as the result of any irregularities in its assumption of jurisdiction under the UCCJA. See *id.* Under these circumstances, as in *J.M.*, 170 Vt. at 588-89, 749 A.2d at 19, we reject mother's argument that the Chittenden Family Court lacked subject matter jurisdiction over N.H.

*Affirmed.*