*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-190

SEPTEMBER TERM, 2015

| | |
|---|---|
| In re M.G., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 208-7-14 Cnjv |

Trial Judge: Michael S. Kupersmith

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights with respect to her daughter, M.G. We affirm.

M.G. was born in July 2014. At that time, mother was homeless, she and the father had a contentious relationship that resulted in altercations, and she had unaddressed mental health concerns. These were the same issues that had led to mother voluntarily relinquishing custody of another child three years earlier before the child reached the age of one. Prior to M.G.'s birth, mother was referred to the Lund Center. Mother made little progress in the Lund Center's program because of her inability to take feedback from the staff, but she was allowed to remain at the Lund Center because of concerns over her health and that of her unborn baby. In June 2014, the Department for Families and Children (DCF) was contacted to conduct an investigation of an incident that the Lund Center staff suspected may have involved mother harming herself and potentially the unborn baby.

The day of M.G.'s birth, DCF filed a petition seeking to have M.G. adjudicated a child in need of care or supervision (CHINS). M.G. was born with a heart defect that would eventually require surgery and regular oversight by a cardiologist her entire life. As soon as M.G. was released from the hospital, she was placed with her paternal grandparents, with whom she has lived since. Mother continued to reside at the Lund Center for a few weeks so that she could have supported visitation and training to learn parenting skills. Unfortunately, mother was discharged from the Lund Center in mid-August because she was unable to progress to the point where she could care for M.G. more than fifty percent of the time.

DCF then referred mother to the Easter Seals Family Time Parent Education Program. But she was discharged from that program at the end of October 2014 because of her inconsistency in visiting M.G., her lack of insight into how the missed visits impacted her relationship with the child, her inability to make progress in learning to meet the child's needs, and her refusal to accept feedback from the staff. In the end, mother missed approximately two-thirds of the seventy-five scheduled visits with M.G.

In November 2014, M.G. was adjudicated CHINS based on mother's admission. At the initial disposition hearing, DCF sought termination of mother and father's parental rights. The father voluntarily relinquished his rights, and a contested hearing was held in April 2015 on the petition seeking termination of mother's rights. Following the hearing, the family division of the superior court concluded in a May 7, 2015 order that clear and convincing evidence at the hearing demonstrated that termination of mother's parental rights was in M.G.'s best interest.

On appeal, mother argues that there is no rational basis for the family court's termination decision because the family court never considered whether an inappropriate case plan caused the failure to remedy the causes and conditions that brought M.G. into state custody, as opposed to mother not meeting the goals of an appropriate case plan. See In re B.L., 149 Vt. 375, 377 (1988) (stating that family court "has authority to review, and accept or reject, the placement recommendation and plan in the original disposition report"). We discern no basis in this argument to disturb the family court's decision. Because DCF sought termination at the initial disposition hearing, the issue was not whether to approve or reject a disposition case plan or to determine whether mother had complied with any such plan, but rather whether DCF's evidence supported termination of mother's parental rights. Indeed, under Vermont law, if DCF or the child's attorney seeks termination of parental rights at the initial disposition hearing, the family court "shall consider the best interests of the child in accordance with [33 V.S.A. §] 5114." 33 V.S.A. § 5317(d). That is precisely what the family court did in this case.

In actuality, mother's argument is that DCF did not provide her appropriate assistance after becoming involved with her. In terminating parental rights, the family court is required to make specific findings on the four statutory best-interest factors, but is not required to make specific findings as to whether DCF made reasonable efforts to assist the parent Cf. In re J.T., 166 Vt. 173, 180 (1997). To be sure, "although a court is not required to find that [DCF] made reasonable efforts to assist a parent, such assistance is a factor in determining whether [DCF] met its burden of showing that a parent is unlikely to be able to resume parental duties within a reasonable period." In re J.M., 170 Vt. 587, 589 (2000) (mem.).

Here, the witnesses at the termination hearing discussed all of services that had been offered to mother. A DCF social worker testified that mother was asked to obtain a cognitive evaluation because it "would be beneficial for DCF to implement strategies for her learning style, her mental issues, so that we could move forward in a plan[ned] way," and that mother was also asked "to sign releases so [DCF] could have access to those evaluations." The social worker further testified, however, that mother did not obtain a cognitive evaluation and revoked all the releases that would have allowed DCF to speak to mother's clinicians or therapist about her cognitive skills and her needs. Nonetheless, the social worker continued to assist mother in making visits with M.G., and mother was provided with a number of services, including Lund Center clinicians, a Lund Center Family Educator, an Easter Seals Family Time Coach, DCF monitored visitation, a housing and medical care counselor, and a therapist. The family court noted several of these services, and mother's failure to benefit from them, most particularly the Lund Center and Easter Seals programs. In addition to finding that mother missed two-thirds of the visits with M.G., the court found that mother refused to provide releases that would have allowed DCF to determine whether she was engaging in counseling or services. Based on these and other findings, the court concluded that mother had not played a constructive role in M.G.'s life, had not been able to attain the most basic parenting skills despite the multiple services offered to her, and had failed to address the issues that led to M.G. being removed from her custody. Thus, the court determined that mother would not be able to resume parental duties

within a reasonable period of time.  These findings and conclusions are supported by the record and were sufficient to support the court's termination order.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

3