*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2010-445

MARCH TERM, 2011

In re S.M. & A.M., Juveniles          }          APPEALED FROM:
                                      }
                                      }          Superior Court, Orange Unit,
                                      }          Family Division
                                      }
                                      }          DOCKET NO. 16/17-3-09 Oejv

                                               Trial Judge: Thomas J. Devine

In the above-entitled cause, the Clerk will enter:

Mother appeals termination of her parental rights to her daughters, S.M. and A.M., born in December 2003 and May 2006, respectively. On appeal, mother argues that the court erred in failing to assess the appropriateness of the plan of services in her case plan. We affirm.

The court found the following facts by clear and convincing evidence. Mother was sixteen when S.M. was born. She and father[1] continued their relationship, married in 2005, and a year later A.M. was born. During the marriage, father was violent and physically abusive to mother. He did not assist in child care. He abused drugs and alcohol and was periodically incarcerated. After S.M. was born, mother's aunt came to visit and was horrified by the unsanitary conditions in the home. In December 2006, following father's increasingly violent behavior, mother left the house with the children and went to her mother's home. After two weeks, in response to father's demands, mother returned the children to the home and left them in father's care. She visited two weeks later and observed that the living conditions were abysmal. The home was filthy, there was a water pipe for smoking marijuana in the living room, the children were dirty, and S.M. was hot and feverish to the touch. Mother called father's probation officer about the marijuana pipe, but she did not contact any social service provider or family member about the children's welfare, and she did not take the children with her when she left.

In January 2007, father brought the girls to mother's aunt, who has four children of her own, and asked her to take them for a few weeks. No one knew where mother was at the time. S.M. later reported that during the six weeks in father's care father had repeatedly sexually abused her and that both girls were extremely neglected. S.M. described how she was forced to eat cat food and scraps from the floor. A.M. was weak and exhausted. The aunt brought the girls to the doctor, who determined that A.M. had extreme muscle atrophy from likely being left in a car seat for long periods of time. She was very underweight, and the doctor diagnosed her with failure to thrive. S.M. had impacted bowels and was suffering from malnutrition. When the aunt eventually spoke with mother on the phone, mother asked the aunt to continue to keep the girls. Mother was homeless and visited the girls sporadically. In March 2007, the aunt sought

---

[1] At the termination hearing mother expressed doubt that her first husband is S.M.'s biological father. For simplicity, we refer to him as father in this decision.

formal guardianship of the children through the probate court. Mother agreed to the guardianship, and the court granted the aunt's petition.

S.M. began to display sexually aggressive behaviors, acting out on other children in the household and self-stimulating in public places. She resisted getting undressed and bathing. She had frequent tantrums and nightmares. She made disclosures about father's sexual abuse. The aunt arranged for therapy for both children. S.M. was diagnosed with post-traumatic stress disorder (PTSD) and attachment disorders.

In the autumn of 2007, mother discontinued visiting the children. During a five-month period she did not attempt to contact them. The children did not ask about their mother or request to see her. In March 2008, mother asked to resume visits. Supervised visits took place over a two-month period. Although the visits appeared to go smoothly, both girls displayed regressive behaviors afterwards. S.M. had tantrums, nightmares, increased sexualized behavior, and was also incontinent. A.M. was alternatively withdrawn and aggressive and also displayed some sexualized behaviors. The behaviors escalated as the visits proceeded. In May 2008, the probate court suspended visitation. The children's therapists testified in favor of suspension, opining that resumed contact could negatively impact the children's emotional health and stability. The court ordered mother to seek counseling to gain insight into her role in the children's neglect and abuse.

Mother took parenting classes, but these classes did not include education on child sexual abuse, PTSD, failure to thrive, or the impact on children of witnessing domestic violence. Mother divorced father in 2008 and in January 2009 remarried. She had a son with her new husband. In April 2009, mother began individual counseling.

Meanwhile, A.M. greatly improved in her aunt's care. She gained weight and caught up developmentally. She is attached to her aunt, uncle, and foster siblings. They wish to adopt A.M. if parental rights are terminated. In December 2008, the aunt determined that she was unable to also continue caring for S.M. because of the risk of S.M. acting out sexually on other children in the aunt's home. S.M. was placed with different foster parents. She initially had difficulty adjusting, but eventually settled into her new home. At the time of the final hearing, she was able to bathe and go to the bathroom without tantrums. She acted appropriately with her foster father and stopped devouring her food. The court found that S.M. is "thriving in their care." They are prepared to adopt S.M. if parental rights are terminated.

In March 2009, the Department for Children and Families (DCF) sought custody of the two girls because of its concern about the permanency of the guardianship order and filed a petition seeking to have the girls adjudicated children in need of care or supervision (CHINS). In June 2009, the family court, with the agreement of mother, granted the CHINS determination based on S.M.'s continued exhibition of sexualized behavior targeted at other minor children, which precluded her continued placement in her aunt's home, and A.M.'s need for permanency, which was not guaranteed by the guardianship arrangement. DCF's initial case plan proposed a concurrent plan of reunification or termination. It directed mother to, among other things, participate in therapy to understand the effect of abuse and neglect on her children and how she could play a positive role in the children's recovery. A family forensic evaluation was performed by Dr. Stone. Dr. Stone observed that mother and her new husband have complementing abilities, but expressed concern about whether mother could manage two additional children. In addition, Dr. Stone concluded that uprooting both S.M. and A.M. would be "unbelievable traumatic and cruel."

In September 2009, DCF amended the case plan and recommended that parents' rights be terminated. In November 2009, following a hearing, the family division denied mother's motion to re-establish parent-child contact, concluding that it would be harmful to the children. Mother appealed, and this Court affirmed. In re S.M. & A.M., No. 2010-010 (Vt. May 21, 2010) (unpub. mem.), available at http://www.vermontjudiciary.org/d-upeo/upeo.aspx.

At the initial disposition hearing on August 12, 2010, DCF sought termination. In a written order, the court granted termination based on an evaluation of the statutory best interests factors. The court found that mother shared responsibility for the children's neglect and abuse by maintaining an unsanitary and unsafe environment prior to her departure from the family home and by leaving her children in the care of a man who she knew was violent, abusive, abused alcohol and drugs, and lacked any experience in caring for children. Despite these actions, the court found that mother had not accepted any significant personal responsibility for her role in the children's suffering. The court concluded that due to the significant abuse and neglect, "the children's relationship with mother is very badly damaged and in all likelihood completely beyond repair." The court also found that the children's relationship with mother was weakened when she ceased contact with them for five months. On the other hand, the court found that the children have a strong and positive relationship with their foster families and that their behaviors and attitudes have improved. The court concluded that mother will not be able to resume parenting within a reasonable period of time because although she has made some progress, she lacks insight about critical issues for the girls, such as PTSD and child sexual abuse, and the children have an immediate need for permanency. Mother appeals.

When termination is sought at the initial disposition hearing, the trial court is directed to "consider the best interests of the child." 33 V.S.A. § 5317(d); see In re J.T., 166 Vt. 173, 177 (1997) (observing that parental rights may be terminated "at the initial disposition hearing if the court finds it to be in the best interests of the child to do so"). In assessing the child's best interests, the court must consider the statutory criteria, including the child's relationship with his natural parents and foster parents, the child's adjustment to his community, the likelihood the natural parent will be able to resume parenting within a reasonable period of time, and whether the natural parent plays a constructive role in the child's life. 33 V.S.A. § 5114(a). The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

Mother argues that the court abused its discretion in failing to review the proposed service plan. Mother notes that DCF's recommended plan of services directed mother to receive counseling and to attend parenting classes, but did not specify that the classes should address issues affecting the girls, such as PTSD, child sexual abuse, and domestic violence. Therefore, mother contends that the court erred in finding that mother could not resume parenting within a reasonable period of time because she had not gained information and insight into these relevant areas. According to mother, the plan of services was deficient because it failed to allow her to address "the causes and conditions which led to the filing of the petition." Id. (quotation omitted).

We conclude that there was no abuse of discretion in this case. The court's analysis of the statutory best interests factors—the only relevant analysis when termination is requested at the initial disposition hearing—was thorough and supported by the evidence. In particular, the court's assessment that mother was not able to resume parenting within a reasonable period of

time is not undermined by the court's failure to specifically review the plan of services. "Although a court is not required to find that [DCF] made reasonable efforts to assist a parent, such assistance is a factor in determining whether [DCF] met its burden of showing that a parent is unlikely to be able to resume parental duties within a reasonable period." In re J.M., 170 Vt. 587, 589 (2000) (mem.). To the extent mother is contending that she did not receive adequate assistance from DCF or that she did not have notice of the steps that were necessary to reunite her family, these arguments are not supported by the record. As early as May 2008, when the probate court first ordered mother to seek counseling and gain insight into her role in the children's abuse and neglect, mother was on notice as to the steps required to reunify with the children. DCF's May 2009 initial case plan identified similar goals for mother. That the plan did not specifically direct mother to take parenting classes on PTSD, sexual abuse and domestic violence does not alter the fact that mother was aware of those issues and their significance to S.M. and A.M.'s emotional well-being. DCF did require her to address these issues in her therapy sessions. Based on DCF's recommendations, mother was offered and took part in services. The family division acknowledged mother's efforts in taking parenting classes and beginning individualized therapy, but ultimately concluded that more was needed to be able to care for the children. The court concluded that the time necessary to address the issues was not reasonable because the children's need for permanency and stability could not be postponed any longer. This finding is based on credible evidence provided by both children's therapists and the family forensic evaluation, and we will not disturb it on appeal.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice