VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.    22-AP-165

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

NOVEMBER TERM,   2022

In re J.S., Juvenile                             }       APPEALED FROM:
(J.S., Mother*)                                  }
                                                 }       Superior Court, Windham Unit,
                                                 }       Family Division
                                                 }       CASE NO. 114-9-17 Wmjv
                                                         Trial Judge: Elizabeth D. Mann

In the above-entitled cause, the Clerk will enter:

Mother appeals from the trial court's termination of her rights in J.S., born in October 2013.  She challenges the court's decision in October 2018 to move the children from her custody under a conditional custody order (CCO) to the custody of the Department for Children and Families (DCF).  We conclude that mother waived this argument and therefore affirm.

The record indicates the following.  In September 2017, DCF filed a petition alleging that J.S. was a child in need of care or supervision (CHINS).  In October 2017, the court issued a CCO providing for J.S.'s continued but monitored placement with mother.  Parents stipulated that J.S. was CHINS the following month and in January 2018, the court issued a disposition order that continued the CCO placement with mother.  Given this placement, no case plan goal was established.  The CCO was extended and modified in the following months.  In October 2018, however, an order, labeled as a temporary care order, was entered transferring custody of J.S. to DCF.  At the temporary care hearing, mother acknowledged that it was in J.S.'s best interests to be placed with his paternal grandmother who was a licensed foster care provider.  In late December 2018, following a hearing, the court issued a modified disposition order continuing J.S. in DCF custody and establishing a case plan goal of reunification with mother. Various orders followed, including a renewed CCO returning J.S. to mother's care in September 2020, an order extending this placement for another three months, and a March 2021 temporary care order that returned J.S. to DCF custody based on safety concerns.

In May 2021, DCF moved to terminate mother's rights.  Father voluntarily relinquished his rights at the initial termination hearing held in February 2022.  A second hearing was held in April 2022.  In May 2022, the court issued an order terminating mother's rights in J.S.  The court found that this case had been open for more than half of J.S.'s life.  J.S. exhibited very disturbing behavior toward animals when he was first placed in his foster home.  He had grown immensely since that time and could now be trusted with animals.  He also began to enjoy school.  J.S.'s progress had taken a high level of love, attention, and parental guidance from his foster mother

who had extensive experience and training in areas of need. While J.S.'s behavior was much improved, he continued to need a high level of support services. To meet his needs in the home and beyond required a great deal of structure, clear boundaries, and a very high level of attention as well as strong coordination of services. While his physical and emotional needs were being met, the court found that permanency was an important and long overdue goal.

J.S. began to develop a connection with mother as she engaged in more consistent visitation in the months prior to the termination-of-parental-rights decision but it was very challenging for him when scheduled visits did not occur. When mother brought the three young children who shared her household to the visits, the visits were highly chaotic, and mother could not control the behaviors or provide J.S. with the attention that he needed.

Based on these and other findings, the court found a change of circumstances based on stagnation. It explained that despite an extended period of time in which to show improvement, mother remained unable to meet J.S.'s needs, even with additional support in place. The court described the various CCOs that had been in place since 2017. It found, among other things, that after the last CCO was revoked, mother's parenting skills never progressed to a point where J.S. could have unsupervised or overnight visits in mother's home. The court found that the complete chaos present in the home at the time the CCO was revoked was equally apparent when mother visited J.S. with her other children. Despite her best efforts and a genuine desire to meet the needs of all her children, mother could not provide J.S. with age-appropriate supervision and structure during family time; she was also unable to recognize that extra precautions needed to be taken to keep dangerous implements like lighters and knives inaccessible to her children, particularly J.S. The court evaluated the statutory best-interests favors and concluded that they all supported termination of mother's rights. This appeal followed.

Mother argues on appeal that the court failed to apply the proper legal standard in the fall of 2018 to the State's motion to vacate the CCO and it erred in relying on her agreement to the modification because it was not knowingly or voluntarily given. She asserts that, had she retained custody of J.S. in 2018, J.S. could have spent his time adjusting to her home rather than adjusting to his foster home and she would not have been required to show that custody should be returned to her.

Mother fails to show how this issue was preserved or explain how her challenge to a 2018 final order is properly before this Court. See V.R.A.P. 28(a)(4) (stating that appellant's brief should explain what issues are, how they were preserved, and what appellant's contentions are on appeal, with citations to authorities, statutes, and parts of record relied upon); see also In re S.B.L., 150 Vt. 294, 297 (1988) (explaining that appellant bears burden of demonstrating how trial court erred warranting reversal, and Supreme Court will not comb record searching for error). Assuming arguendo that the October 2018 ruling—labeled a temporary care order—was not a final order, mother did not appeal from the December 2018 modified disposition order that continued custody with DCF. This order became final. See 33 V.S.A. § 5318(d) (stating that disposition order is final order); In re C.L.S., 2020 VT 1, ¶ 16, 211 Vt. 344 (recognizing that failure to appeal initial disposition order renders that order final and generally not subject to collateral attack). Mother identifies no basis for collaterally attacking this long-final order. She also fails to show that she raised this issue during the termination proceedings below. See Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). We do not address mother's challenges to the

2018 order because we conclude that they were waived.  Mother does not otherwise challenge the court's termination decision and we find no error.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

Nancy J. Waples, Associate Justice