VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.    22-AP-311

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2023

| | |
|---|---|
| In re P.H. & C.H., Juveniles (K.H., Father\* & A.L., Mother\*) | } APPEALED FROM:<br>}<br>} Superior Court, Lamoille Unit;<br>} Family Division<br>} CASE NOS. 28-3-19 Lejv; 27-3-19 Lejv<br>Trial Judge: Michael J. Harris |

In the above-entitled cause, the Clerk will enter:

Mother and father separately appeal the family division's decision terminating their parental rights to P.H. and C.H., born in October 2012 and November 2010, respectively.  On appeal, father challenges a placement decision made in 2020.  Mother joins father's argument and also argues that she was denied counsel and due process during various stages of the proceeding.  We affirm.

The family division made the following findings.  Between 2005 and 2019, the Department for Children and Families (DCF) received nineteen reports about parents related to substance abuse and medical and educational neglect of their children.  In March 2019, the State filed a petition alleging P.H. and C.H. were children in need of care or supervision (CHINS). The children were placed in DCF custody under an emergency care order.  The merits hearing was held in July 2019.  Mother was not present as she had been incarcerated in Massachusetts on drug charges.  Father stipulated that P.H. and C.H. were both CHINS because substance abuse interfered with his ability to provide proper care for the children.  The initial disposition order was entered in August 2019.  The goals for parents included abstaining from using substances, participating in substance-abuse counseling, signing releases for DCF, engaging in treatment for substance abuse, participating in Family Time, and maintaining safe and adequate housing.  The disposition plan had a goal of reunification with either parent.

Between March 2019 and March 2020, both parents were criminally charged with drug offenses.  They also both engaged in medically assisted treatment for substance-use disorder and Family Time coaching.  In March 2020, at the start of the COVID-19 pandemic, DCF attempted a trial reunification and placed the children with parents.  Parents had wrap-around services, including through Lamoille County Mental Health and the children's school.  The services included case management and individual therapy for the children.  The placement was not successful.  Because of the pandemic, C.H. and P.H. had remote school, but they did not want to use computers for schoolwork.  C.H. had meltdowns and uncontrollable behavior, including

threatening to hurt himself and others. The children refused to do remote counseling. In addition, parents did not sign or maintain releases so DCF could not verify parents' treatment status or whether they were using illicit drugs. DCF removed the children from parents' home in July 2020.

In August 2020, parents were arrested on felony drug trafficking charges and incarcerated. Mother was released in October 2020 and father was released in March 2021. Family Time coaching ceased due to the incarceration. Over the following two years, parents engaged in various substance-abuse programs but had repeated relapses. Father continued to have positive fentanyl results from April to June 2022. Mother also tested positive for cocaine and fentanyl from March to June 2022. Since the children were removed from parents' home in July 2020, parents have had one in-person visit. By April 2022, children's clinician opined that contact with parents could be traumatic for the children and the children were reluctant to have visits.

After initial placements with maternal grandparents and then an aunt were not successful, DCF placed the children in a foster home, where they have been continuously since November 2019, except for the placement with parents during March to July 2020. At the time of placement with foster parents, C.H. had a bad temper, anger issues, and did not engage with people. He dysregulated at school and was behind academically. P.H. had considerable difficulty sleeping and craved affection. Both children were picky eaters and required dental care. C.H. began receiving behavioral support at school and both children had counseling. C.H. became calmer at school, was less aggressive, and was able to communicate when upset. By the time of the termination hearing, C.H. slept well and was not a picky eater. P.H.'s eating habits improved, and he was able to go to bed in his own room and fall asleep. The children received necessary medical and dental care. In foster parents' home, the children had structure and a daily schedule. The children established a close and loving relationship with their foster family. C.H. did not want a relationship with parents.

In September 2021, the State moved to terminate parental rights. Following an evidentiary hearing over several days, the family division found that there was a change in circumstances due to parents' stagnation. The court found that parents had significant illicit drug use within the five months preceding the hearing and their drug use prevented them from safely parenting children. Parents had not consistently engaged in communication with DCF or resumed contact with children. Parents did not complete parenting class, were not employed, and lacked consistent housing. The court further found that termination was in the children's best interests. Children had limited interaction with parents and C.H. did not want to see parents. The children had a strong and caring bond with their foster family. They were well adjusted to their community and school and receiving appropriate educational and counseling supports. Most importantly, children required stability and parents were not able to resume parenting in a reasonable time, given their untreated substance-use disorder, lack of regular visitation, nonengagement with DCF, and lack of long-term, stable housing. Parents both appeal.

On appeal, father, joined by mother, contends that the family division erred by not issuing a conditional custody order and instead allowing DCF to place the children with parents in 2020. According to parents, the DCF placement was done with inadequate support for parents and negatively impacted parents' ability to resume parenting in a reasonable time. Parents claim that by placing children in parents' home without sufficient DCF engagement, which a conditional custody order would provide, DCF set parents up to fail. The State responds that DCF provided parents with an array of services, including case management, individualized

therapy for the children, support from the children's school, respite care, and home visits.[1] The State further asserts that parents did not request additional services at the time, and in any event, the attempted reunification was not the cause of parents' inability to parent within a reasonable time.

We need not analyze whether the supports that DCF had in place were sufficient or whether this argument was adequately preserved for appeal.[2] Parents have failed to demonstrate how DCF's action of placing the children with parents in 2020 contributed to termination of their parental rights.

When the termination of parental rights is sought after initial disposition, the trial court must conduct a two-step analysis. In re B.W., 162 Vt. 287, 291 (1994). The court must first find that there has been a change in circumstances, and second "find that termination of parental rights is in the child's best interests." In re S.W., 2003 VT 90, ¶ 4, 176 Vt. 517 (mem.); see also 33 V.S.A. § 5113(b) (requiring court to find change in circumstances before modifying existing order). In assessing the child's best interests, the family division is guided by the statutory criteria. 33 V.S.A. § 5114(a). The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.).

There is no merit to parents' assertion that the placement prevented them from being able to resume parenting in a reasonable time. See In re C.P., 2012 VT 100, ¶ 38, 193 Vt. 29 (explaining that "the level of assistance provided to parents is relevant in determining whether a parent is unlikely to be able to resume parental duties within a reasonable period" (quotation omitted)). The evidence supports the family division's findings that parents had ongoing, untreated substance-use disorder, failed to engage in visitation, declined to engage with DCF, and lacked employment and long-term stable housing. These findings in turn support the family division's conclusion that parents would not be able to parent in a reasonable time. Given these findings, it is evident that parents' inability to parent in a reasonable time was due to their own behavior and not a result of DCF's actions.

Next, we turn to mother's arguments. Mother's first argument—that she was denied counsel during the temporary-care hearing—is without merit and not supported by the record. At the temporary-care hearing that occurred on March 11, 2019, parents appeared for the first time in the case. The court informed parents that they were entitled to be represented by counsel and provided parents with the forms to request appointment of counsel. The court allowed parents an opportunity to speak and alerted parents to the date of the next hearing. After the hearing, parents requested counsel, and it was provided to them. At no time were parents denied representation. Contrary to mother's assertion, the record supports the court's finding that parents had continuous representation throughout the case.

---

[1] The State notes that DCF and providers attempted home visits, but parents were not present. At termination, parents asserted that DCF failed to provide them with more services before ending the placement with parents. The family division gave "negligible weight" to the cause of the failure of the 2020 placement given that parents' new drug charges and incarceration in August 2020 would have prevented continued placement in parents' home in any event.

[2] Our past cases have emphasized that if parents require additional services from DCF, they must raise these concerns in a timely fashion. In re B.S., 166 Vt. 345, 355 (1997).

Mother also argues that she was deprived of due process because she was not provided notice of the April 9, 2019 hearing and that the merits adjudication was infirm because she did not sign the CHINS stipulation. Mother's arguments concern procedures surrounding the merits determination and predating the first disposition order, which is now final. "A CHINS merits determination becomes final and subject to appeal once the court issues the resulting disposition order." In re C.L.S., 2020 VT 1, ¶ 16, 211 Vt. 344. Because mother did not appeal the initial disposition order and that order is final, she is now precluded from collaterally attacking the merits determination and its attendant procedures "absent a demonstration that it is void due to lack of jurisdiction or because it was entered in a manner inconsistent with due process of law." See In re C.B., 2020 VT 80, ¶ 38, 213 Vt. 215 (providing that merits decision became final after initial disposition and could not be collaterally challenged on appeal from subsequent disposition order). There was no such error here. The record reflects that mother's counsel received notice of the April 9, 2019, hearing and mother received notice directly from the court at the temporary-care hearing. As to the CHINS stipulation, the fact that one parent stipulated to CHINS is insufficient to render a merits decision void for lack of subject-matter jurisdiction. In re C.L.S., 2020 VT 1, ¶ 18.

Affirmed.

BY THE COURT:


Paul L. Reiber, Chief Justice


Karen R. Carroll, Associate Justice


William D. Cohen, Associate Justice

4