VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.     23-AP-337

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MARCH TERM,   2024

| | |
|---|---|
| In re K.L. & J.L., Juveniles<br>(M.J., Mother\*) | } APPEALED FROM:<br>}<br>} Superior Court, Franklin Unit;<br>} Family Division<br>} CASE NOS. 21-JV-01723 & 21-JV-01725<br>Trial Judge: Elizabeth Novotny |

In the above-entitled cause, the Clerk will enter:

Mother appeals termination of her parental rights to K.L. and J.L., born in February 2012 and July 2007, respectively.[1]  On appeal, mother argues that the court erred in adopting findings from the merits decision, admitting hearsay, and terminating her rights when there were options to preserve nontraditional living arrangements for the children.  We affirm.

The court made the following findings.  From 2012 to 2014, the Department for Children and Families (DCF) was involved with the family due to concerns related to domestic violence, substance abuse, and failure to supervise the children.  The children were adjudicated children in need of care or supervision (CHINS) in 2014 and placed in the care of their maternal grandmother, who became their permanent guardian in 2017.

In 2021, the probate court terminated the permanent guardianship and custody of the children reverted to DCF.  See 14 V.S.A. § 2666(b) (providing that when permanent guardianship is terminated by probate division, custody reverts to DCF).  In December 2021, the State filed petitions alleging the children were CHINS, and the court found that J.L. and K.L.

---

[1] Father has not been involved with the children since 2017.  Despite numerous efforts to contact and communicate with father, father did not attend any hearings in the case or interact with DCF on any action steps.  The court terminated father's parental rights and he did not appeal.  Therefore, the discussion in this decision focuses on mother.

were CHINS because they were abandoned. The resulting disposition order had a goal of reunification with either parent. The action steps for mother included providing safe, clean, and adequate housing, engaging in therapy, signing releases for DCF, working with service providers, attending monthly meetings, engaging with substance-use counseling, and consulting with a domestic-violence specialist.

In December 2022, DCF filed a permanency plan with a goal of adoption, and the State moved to terminate parents' rights. Following a hearing, the court found that there was a change of circumstances due to stagnation. Father did not make any progress towards reunification. Mother failed to meet the requirements of her action steps and behavioral goals. Mother has a long history of substance abuse. In 2022, mother relapsed and began using cocaine, and was jailed in Massachusetts in October 2022 for possession of cocaine and fentanyl. Other than one test in March 2022, mother failed to comply with DCF's requests for drug tests, and mother did not provide releases so DCF could communicate with service providers. Mother had inconsistent visits with the children and very limited in-person contact after July 2022. Mother did not attend the children's medical or dental appointments, or parent-teacher conferences. She did not meet and engage with DCF. Mother was unable to obtain safe, clean, and stable housing. She had several residences but at the time of the final hearing she was in emergency housing because she was assaulted by the man she was living with. Mother did not contact the domestic-violence specialist. Mother was unable to be a reliable and safe parent.

The court further found that termination was in the children's best interests. The children's relationships with mother were harmed by substance abuse, prolonged absence, and failure to consistently parent. J.L. did not have a healthy parental bond with mother and after mother's outreach in December 2022, J.L had a mental-health crisis. J.L. has been with her foster family since April 2022. At the time, she was emotional and unstable, and struggling in school. She had anxiety and did not sleep well. J.L. began addressing her mental health and formed loving bonds with her foster mother and foster siblings. She improved in school and participated in school activities. K.L. has also improved in foster care. He has a routine and is improving in school. He is engaged in extracurricular activities. Overall, the children were in positive and stable foster homes and adjusted to their school and communities. Neither parent would be able to resume parental duties in a reasonable time. Mother did not complete important action steps and acknowledged that she was not ready to parent the children. Mother did not play a constructive role in her children's lives. Therefore, the court granted the petition to terminate parents' rights. Mother appeals.

When the State moves to terminate parental rights after the initial disposition, the court must find first that there is a change of circumstances, 33 V.S.A. § 5113(b), and second, "that termination of parental rights is in the child's best interests," In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.); see 33 V.S.A. § 5114(a) (requiring court to consider "best interests of child" when petition to terminate is filed). In assessing the child's best interests, the court must consider the statutory factors. 33 V.S.A. § 5114(a). The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639, (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

2

Mother's first argument focuses on the dissolution of the guardianship in the probate division and the merits of the resulting CHINS proceeding in 2022. The record reflects the following. In late 2021, the children were living with their maternal grandmother and great-grandmother and maternal grandmother was their guardian. DCF received reports of truancy and violence in the home. In November 2021, a maternal aunt filed a motion with the probate division to modify the guardianship and become guardian for J.L. The court held a hearing at which grandmother did not appear. She later indicated that she was unable to attend because she was caring for great-grandmother.

The court denied the motion to modify the guardianship, but indicated it was considering terminating the guardianship.[2] In December 2021, the State filed a petition with the family division alleging that J.L. and K.L. were CHINS. The court held a temporary care hearing at which grandmother, aunt, and mother all appeared. The probate judge also participated. The probate court issued orders terminating the permanent guardianship and ordered the children into DCF custody. This order was not appealed. Following a hearing, the court continued DCF custody with the agreement of the parties.

The State filed an amended petition alleging abandonment. See 14 V.S.A. § 2666(b)(3) (directing that after permanent guardianship is terminated by probate division and custody is transferred to DCF State must commence CHINS proceedings "as if the child were abandoned"). The family division held a CHINS merits hearing in March 2022; both mother and grandmother participated with counsel. The court found K.L. and J.L. CHINS based on abandonment. The court subsequently issued a disposition order in August 2022, and mother did not appeal it.

At the termination hearing, the March 2022 merits decision was entered as an exhibit. In its termination decision, the family division indicated that "[a]s there is no credible evidence to the contrary, and based upon the credible admissible evidence," it was adopting findings from the March 2022 CHINS merits decision by clear and convincing evidence regarding the termination of the guardianship, the lack of an appeal, the placement of the children in DCF custody and the resulting CHINS for abandonment.

Mother now argues that the family division improperly adopted these findings from the CHINS decision into the termination order because the merits facts were made by a preponderance of the evidence and termination requires findings by clear-and-convincing evidence. See In re A.M., 2015 VT 109, ¶ 38, 200 Vt. 189 (explaining that findings made earlier in proceeding may be adopted at termination if findings at merits "were made under the same standard of proof applicable in" termination). Mother contends that by incorporating these findings at a higher standard of proof the court in effect modified the merits order and therefore the merits decision can be appealed at this stage in the proceeding.

---

[2] Contrary to mother's assertion, the probate court did not appoint aunt as a successor guardian for J.L. Although the probate court identified aunt as a possible successor guardian, no formal appointment was made.

To be sure, generally findings from a prior order made with a lower standard of proof cannot be incorporated at termination. See id. Here, however, the family division did not simply incorporate the CHINS findings; instead, it adopted the findings by a clear-and-convincing standard based on evidence provided at termination, including the exhibit of the merits decision, and the testimony from the DCF worker and grandmother regarding the termination of the guardianship. In any event, mother has failed to demonstrate how incorporating these facts impacted the termination order. These findings regarding the reasons for the failed guardianship and the basis for the CHINS decision were not challenged at termination and were not critical to the court's termination order. The court did not rely on these findings to assess mother's stagnation or to analyze the children's best interests. See In re R.W., 2011 VT 124, ¶ 17, 191 Vt. 108 (explaining that at termination "an error warrants reversal only if a substantial right of the party is affected" (quotation omitted)).

In addition, the court's adoption of the findings in the CHINS order did not amount to a modification as mother posits. The merits decision and resulting disposition order were unchanged by the findings at termination. Therefore, we do not reach mother's arguments regarding the CHINS merits decision or first disposition order in August 2022 as these are collateral attacks on a final judgment. See In re C.L.S., 2020 VT 1, ¶ 16, 211 Vt. 344 (explaining that CHINS merits decision is final once disposition order issues and cannot be collaterally attacked at later stage of proceeding). Mother had an attorney and fully participated in the CHINS and disposition proceedings. She did not appeal those orders and is now foreclosed from raising arguments regarding those orders.[3]

Mother next argues that the family division erred in admitting hearsay without providing a basis for its reliability or probative value. Mother asserts that there were at least six different instances where hearsay was admitted over mother's objection. Hearsay may be admitted in termination proceedings and relied on but "may not be the sole basis for termination of parental rights." See In re D.F., 2018 VT 132, ¶ 44, 209 Vt. 272 (quotation omitted). Mother asserts that the court was obligated to make written findings as to its rationale for admitting hearsay, but there is no such requirement.

Moreover, mother does not identify which hearsay evidence was improperly admitted or explain how the challenged evidence impacted the court's termination decision. There was ample evidence in the record to support the court's findings that mother's progress had stagnated, and that termination was in the children's best interests. Mother did not take the steps

---

[3]  For this reason, we do not address mother's assertion that the CHINS process improperly deprived extended family members from caring for the children without a showing that the children were at risk of harm. At the termination stage, the question is whether there was a change of circumstances and whether termination is in the child's best interests. The court here properly focused on those issues, and as part of that analysis, the court considered the relationships of the children with mother and their extended family. See In re K.F., 2013 VT 39, ¶ 29, 194 Vt. 64 (explaining that in assessing whether to terminate parental rights "the trial court was not required to make specific findings on the potential parental fitness of [parent's] other family members").

needed to adequately parent the children and would not be able to resume parenting within a reasonable time. Therefore, there are no grounds to disturb the termination decision.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Nancy J. Waples, Associate Justice